No. 97-509

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 343

PETER J. THOMAS and LEONARD L. THOMAS,

individually and d/b/a STAN & SONS PLUMBING & HEATING,

Plaintiffs and Appellants,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY,

Defendant and Respondent.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Margaret L. Sanner (argued), and Michael J. Milodragovich;

Milodragovich, Dale, Steinbrenner & Binney, P.C.; Missoula, Montana

For Respondent:

Susan P. Roy (argued) and William Evan Jones; Garlington,

Lohn & Robinson, P.C.; Missoula, Montana

Heard: May 8, 1998

Submitted: June 30, 1998

Decided: December 31, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. The appellants, Peter J. Thomas and Leonard L. Thomas, doing business as Stan & Sons Plumbing & Heating, filed an action against their insurer, Northwestern National Insurance Company, in the Third Judicial District Court, Powell County. The thrust of the lawsuit is that Northwestern wrongfully refused to defend and indemnify Stan & Sons under a commercial general liability insurance policy. At issue is a change to a policy exclusion relating to pollution coverage that Northwestern made during an annual renewal of the policy. The District Court granted summary judgment in favor of Northwestern and Stan & Sons appeal. We reverse.**

**¶2. We restate the dispositive issues as follows:**

**¶3. 1. Did the District Court improperly grant summary judgment in favor of Northwestern by determining that an insurer has no duty to inform its insured of policy changes when said policy is renewed?**

**¶4. 2. Did the District Court improperly conclude that the Unfair Trade Practices Act, specifically § 33-18-242(3), MCA, bars an insured from asserting claims of negligence, bad faith, and breach of a fiduciary duty against its insurer?**

**¶5. 3. Did the District Court err in granting summary judgment in favor of Northwestern on the bad faith claim?**

**¶6. 4. Did the District Court err in granting summary judgment in favor of Northwestern on the breach of fiduciary duty claim?**

FACTUAL BACKGROUND

¶7. Appellants provide plumbing and heating services in Deer Lodge, Montana. In March 1989, they purchased a commercial general liability policy from Northwestern through the Greany Insurance Services, Inc., a local independent insurance agency. The policy in question was renewed through the Greany agency on an annual basis for subsequent years through 1993.

¶8. In the spring of 1992, appellants were installing or servicing a furnace for a customer when a fuel oil spill occurred and damaged the customer's property. The customer filed suit against appellants to recover damages. Appellants tendered the defense to Northwestern, which refused to defend and indemnify the contractor. Northwestern denied it had a duty to defend or indemnify based upon the pollution exclusion contained in the policy. Appellants then hired counsel and defended the action. A verdict and judgment was ultimately entered against appellants in the amount of $48,037.30. Hence, appellants filed this action against Northwestern, seeking indemnification for the judgment and related damages.

¶9. This dispute centers around an exclusion in the commercial liability policy which purports to exclude coverage for pollution incidents. The original policy, which was effective on March 1, 1989, included a provision which excluded liability for certain pollution incidents. The declaration page included a reference to "111PLS" which was a schedule of the forms and endorsements that applied to the policy, and appeared immediately following the declaration page. Included on the schedule was an entry titled "AMENDMENT OF POLLUTION EXCLUSION" which was an amendment of the pollution exclusion contained in the body of the policy. The amendment was attached at the end of the policy.

¶10. In 1990 the policy was renewed. The declaration page similarly included a reference to "111PLS" which was the schedule listing the applicable forms and endorsements, again appearing immediately following the declaration page. Listed on the schedule was an endorsement titled "POLLUTION EXCLUSION." The endorsement itself was attached at the end of the policy and read: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." The endorsement was actually entitled "TOTAL POLLUTION EXCLUSION" and replaced language contained in the body of the policy. Appellants claim that this total pollution exclusion was a broader exclusion than what was contained in the original policy. The policy was subsequently renewed with the total pollution exclusion endorsement in March 1991 and March 1992.

¶11. The appellants claim that the change that Northwestern made to their commercial liability policy substantially changed the coverage and significantly limited Northwestern's liability for pollution incidents. In their complaint, appellants allege that Northwestern failed to provide them adequate notice, either directly or through Greany, of this substantial change in their policy. Specifically, appellants allege that by not informing them of this important change, Northwestern was negligent, breached an implied covenant of good faith and fair dealing, and breached its fiduciary duty to them as insureds.

¶12. Northwestern moved for summary judgment on several grounds. First, it claims it had no duty to inform appellants of the change in pollution coverage in any other fashion than was done here, that is by amending the policy through renewal. Thus, without a duty, appellants' negligence action must fail as a matter of law. Second, Northwestern claims that Montana's Unfair Trade Practices Act, specifically § 33-18-242(3), MCA, precludes appellants from pursuing any common law theories of recovery.

¶13. The District Court granted Northwestern's motion for summary judgment and appellants appeal.

STANDARD OF REVIEW

¶14. On appeal from a summary judgment, this Court reviews a case *de novo* based on the same criteria applied by the district court. *See Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Thus,

[t]he movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determination made by a district court as to whether the court erred.

*Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (quoting Bruner v. Yellowstone County (1995), 272 Mont. 261,

*264-65, 900 P.2d 901, 903). Our review of a summary judgment is much broader than other appeals. See District No. 55 v. Musselshell County (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253 (quoting McCain v. Batson (1988), 233 Mont. 288, 298, 760 P.2d 725, 731).*

ISSUE 1

**¶15. Did the District Court improperly grant summary judgment in favor of Northwestern by determining that an insurer has no duty to inform its insured of policy changes when said policy is renewed?**

**¶16. In Count I of their complaint, appellants state a claim in negligence against Northwestern. The essence of their claim is that Northwestern had a duty to notify them of any changes in their insurance coverage, either directly or through the agent Greany. Having received no such notification, appellants allege that this duty was breached and they suffered damages as a direct result.**

**¶17. Nonetheless, the District Court determined that no such duty exists. The court decided that appellants had a duty to read their renewed policies and, had they done so, they would have been aware that the renewed policy included the total pollution exclusion. The District Court, finding that Northwestern had no duty to inform appellants of the policy change other than by changing the policy terms in the renewal, concluded that appellants' negligence claim must fail.**

**¶18. At the outset, it is important to note that the record contains no analysis of the differences between the pollution exclusion in the 1989 policy and the total pollution exclusion contained in the subsequent policies. Northwestern, indeed, argues that the 1992 pollution incident would not have been a covered loss under either exclusion. Although this analysis may be probative on the issue of whether Northwestern breached any duty owed to appellants, or whether appellants suffered damages, it is not relevant to the question of whether a duty exists. It is clear that the District Court determined that Northwestern had no duty to appellants under their negligence theory without reaching issues of breach and causation.**

**¶19. Whether a legal duty is owed from one party to another is a question of law. *See Nautilus Ins. Co. v. First National Ins., Inc.* (1992), 254 Mont. 296, 299, 837 P.2d 409, 411 (citing *Roy v. Neibauer* (1981), 191 Mont. 224, 226, 623 P.2d 555, 556). Although the Montana Supreme Court has never directly addressed this precise issue, that is what duty an insurer owes its insured when it changes policy coverage on policy**

renewal, we now hold that when an insurer renews a previously issued policy, it has an affirmative duty to provide adequate notice to the insured of changes in coverage.

¶20. Appellants persuasively argue on appeal that in Montana insurers are required by statute to notify their insureds of policy changes and this statutory obligation creates the duty not found by the District Court. Specifically they refer us to § 33-15-1106, MCA, which requires that an insurer provide the insured written notice thirty days in advance of the changes. Section 33-15-1106, MCA (1991), states, in part:

If an insurer offers or purports to renew a policy but on less favorable terms, at a higher rate, or at a higher rating plan, the new terms, rate, or rating plan take effect on the policy renewal date only if the insurer has mailed or delivered notice of the new terms, rate, or rating plan to the insured at least 30 days before the expiration date.

¶21. Northwestern contends that this statutory obligation was not raised in the District Court and the appellants should not be allowed to make this argument on appeal. The insurer further argues that the statute does not apply in this instance because there were no meaningful differences between the pollution exclusions in 1989 and subsequent years.

¶22. Although we recognize that the statutory obligation was not raised in the District Court, the appellants alleged in their complaint that the insurer had a duty to notify its insureds of the policy change. The statutory basis simply represents further legal support of such a duty and does not raise a new theory of liability on appeal. In our *de novo* review of a district court ruling on summary judgment, we are not bound by the legal authority presented in the district court. Furthermore, both sides have extensively briefed and argued this issue on appeal.

¶23. We also are mindful that Northwestern steadfastly maintains that the 1992 incident would not have been covered under the original policy and therefore there was no need to provide notice. Again, the District Court never reached that point in its negligence analysis. The court held that there was no duty as a matter of law. Whether there would have been coverage under the original policy will be an issue we expect will be addressed on remand.

¶24. In passing, we also observe that other courts which have addressed this issue

have held that when an insurer renews a policy, the burden is on the insurer to notify the insured if the policy differs from the original policy. Representative of these decisions is *United States Fidelity & Guar. Co. v. Quisel* (D. Mont. 1990), 7 M.F.R. 483 (No. CV 89-149-BLG-JFB) (an insurer's failure to provide adequate notice of coverage changes will equitably estop the insurer from using the protection of the changes, and the more expansive coverage under the terms of the previous policy will apply); *Woodlawn Fraternal Lodge No. 525, F. & A.M. v. Commercial Union Ins. Co., O.M.* (Ala. 1987), 510 So. 2d 162, 164 (failure to notify an insured that renewal policy differs from original results in insured's being entitled to coverage under the policy as originally issued); *Canadian Universal Ins. Co. v. Fire Watch, Inc.* (Minn. 1977), 258 N.W.2d 570, 575 (when an insurer by renewal of a policy or by endorsement to an existing policy substantially reduces coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in coverage); *see also General Agents Ins. Co. v. St. Paul Ins. Co.* (Ark. Ct. App. 1987), 732 S.W.2d 868, 870; *Campbell v. Insurance Service Agency* (Minn. Ct. App. 1988), 424 N.W.2d 785, 790; *Hester v. American Family Mut. Ins. Co.* (Mo. Ct. App. 1987), 733 S.W.2d 1, 2.

¶25. The reasoning behind this duty imposed by our Legislature and the case law from other jurisdictions is sound. As with the original policy, a renewal policy is a contract. As with any contract, the parties must necessarily agree on the terms of the renewal coverage. Certainly the insured has a reasonable expectation that his insurance policy will not be renewed on less favorable terms unless the insurer affirmatively notifies him of the changes. Under the circumstances of this case, whether such an obligation was breached by Northwestern and whether appellants were damaged thereby is yet to be determined.

¶26. It is important that we address one additional aspect of the District Court's summary judgment ruling because it may have relevance on remand. In reaching its decision that the insurer had no duty to notify its insureds of the subsequent policy changes, the District Court focused its attention on the general rule that an insured has an obligation to read and examine the insurance policy. The court determined that in this instance the appellants had an obligation to read their policy and, had they done so, it would have been clear to them that the pollution exclusion was changed.

¶27. The appellants, however, point to our recent decision in *Fillinger v.*

*Northwestern Agency, Inc.* (1997), 283 Mont. 71, 77-80, 938 P.2d 1347, 1351-52, where we held that the extent of an insured's obligation to read the policy depends upon what is reasonable under the facts and circumstances of each case. Northwestern correctly points out that *Fillinger* was a dispute between an insured and his agent where we held that the insured could reasonably rely on the affirmative representations of the agent instead of reading all the provisions of the policy. Northwestern argues that in disputes between insureds and their insurers, the insured has a duty to read the policy and notify the insurer of any discrepancy. *Floral Consultants, Ltd. v. Hanover Ins. Co.* (Ill. App. Ct. 1984), 470 N.E.2d 527 (cited with approval in *Fillinger*).

¶28. In *Fillinger*, we concluded that an insured does not have an absolute obligation to read the policy in every situation. Under the facts presented here we cannot conclude as a matter of law, as did the District Court, that the appellants' failure to read the policy renewal bars their recovery. Reasonable minds may differ on whether one should be expected to read a renewed insurance policy, page by page, to determine if there are any significant changes. In fact, the requirements of § 33-15-1106, MCA (1991), suggest otherwise. We believe most insurance consumers expect the same coverage in a renewal unless the change is conspicuously brought to their attention. Here, a fair comparison of the policies in 1989 and 1990 would reveal no significant changes in either the declaration page or the second page which scheduled the forms and exclusions. One would have to read through the entire policy before reaching the endorsement section where the total pollution exclusion was placed. Even then, the insured would have to compare the total pollution exclusion with the pollution exclusion contained in the original policy to determine if there was any difference. Some courts have decided, and we agree, that where the policy at issue is a renewal policy, the insured's duty to read it may be less than the insured's duty to read the original policy. *See, e.g., Quisel*, 7 M.F.R. at 497; *Woodlawn Fraternal Lodge No. 525*, 510 So. 2d at 164.

¶29. We conclude that the insurer has the burden to prove that it provided adequate notice of policy changes to its insured. Whether there is adequate notice depends on the facts and circumstances in each instance.

ISSUE 2

¶30. Did the District Court improperly conclude that the Unfair Trade Practices Act,

specifically § 33-18-242(3), MCA, bars an insured from asserting claims of negligence, bad faith, and breach of a fiduciary duty against its insurer?

¶31. In further support of its summary judgment order, the District Court determined that Montana's Unfair Trade Practices Act precludes appellants from prosecuting common law tort claims against Northwestern. Section 33-18-242(3), MCA, provides:

An insured who has suffered damages as a result of <u>the handling of an insurance claim</u> may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action. An insured may not bring an action for bad faith in connection with <u>the handling of an insurance claim</u>.

(Emphasis added.)

¶32. The District Court concluded that appellants' allegations against Northwestern were encompassed in the language of § 33-18-201(5), MCA, which defines an unfair settlement practice as "fail[ure] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed." Thus, the District Court determined that appellants were limited to the causes of action permitted by § 33-18-242(3), MCA.

¶33. We conclude that the District Court misconstrued the nature of appellants' complaints. The Unfair Trade Practices Act was crafted by the Legislature to address the unfair treatment of insureds by their insurance companies in the "handling of insurance claims." A cursory review of the practices outlawed by the Act, found in § 33-18-201, MCA, clearly points out that the Act addresses the relationship between an insured and an insurance company once a claim has been filed. Under § 33-18-201(5), MCA, relied on by the District Court, an insurer is required to either affirm or deny coverage within a reasonable time after a claim is presented. The appellants' causes of action focus on Northwestern's conduct during the renewal of the policy, not on the improper handling of the claim or on dilatory claims processing, which § 33-18-201(5), MCA, prohibits. All of appellants' tort claims pertain to events that occurred prior to the handling of the claim.

¶34. Northwestern argues, however, that suit was filed by appellants only after their

demand for insurance coverage was denied. Although appellants were not aware of the policy change until a claim for coverage was denied, it certainly was not a tardy response to a claim that was the nature of their complaints. A plain reading of § 33-18-201, MCA, simply does not address the conduct which is the subject matter of the appellants' tort claims.

¶35. It is also clear that the Legislature did not intend the Unfair Trade Practices Act to be the exclusive remedy in litigation instituted by insureds against their insurers. Section 33-18-242(6)(a), MCA, provides that "[a]n insured may file an action under this section, together with any other cause of action the insured has against the insurer." To interpret § 33-18-242, MCA, as an exclusive remedy, would cause us to insert language in § 33-18-242, MCA, that does not already exist. *See* § 1-2-101, MCA.

¶36. The authority cited by Northwestern to support its position that the Act precludes appellants from pursuing their common law claims is not persuasive. *See, e. g., Fidelity and Guar. Ins. Co. v. Woodward* (D. Mont. 1995), 19 M.F.R. 517 (No. CV 93-11-BLG-JDS); *Van Valkenburg, et al. v. State Farm Mut. Auto. Ins. Co.* (D. Mont. 1992), 12 M.F.R. 232 (No. CV 92-38-BLG-JFB). Each of these cases involve litigation originating from the actual handling of an insurance claim. Here, appellants allege pure common law claims without adding violations of the Unfair Trade Practices Act.

¶37. Therefore, we hold that § 33-18-242(3), MCA, does not bar appellants' common law causes of action.

## ISSUE 3

¶38. Did the District Court err in granting summary judgment in favor of Northwestern on the bad faith claim?

¶39. Although the District Court decided that the Unfair Trade Practices Act barred the appellants' common law claims, the court proceeded to further evaluate the claims. Given our conclusion that the claims were not barred by the Act, it is now necessary that we address the District Court's continued analysis.

¶40. The District Court determined that, regardless of implication of the Unfair Trade Practices Act, our decision in *Story v. City of Bozeman* (1990), 242 Mont. 436,

**791 P.2d 767, prevents the appellants from bringing their bad faith action. In *Story*, this Court significantly restricted the scope of what was commonly known as the tort of bad faith. Recognizing that the tort's most common application in Montana jurisprudence was codified in the Wrongful Discharge from Employment Act and the Unfair Trade Practices Act, this Court went further and held that the tort can only be pursued in a contractual setting where "special circumstances" exist between the parties and the matter is not otherwise controlled by specific statutory provisions. Here, the District Court held that appellants could not pursue their bad faith action because it was not only barred by the Unfair Trade Practices Act, but also by our holding in *Story*.**

**¶41. In *O'Fallon v. Farmers Insurance Exchange* (1993), 260 Mont. 233, 859 P.2d 1008, we held that when the Unfair Trade Practices Act does not apply to the cause of action against an insurer, an insured may bring an action under the common law. [(1)](#) Citing § 1-1-108, MCA, we stated that when the common law is not in conflict with the statutes, it shall be the law. *See O'Fallon*, 260 Mont. at 244, 859 P.2d at 1015. In *Stephens v. Safeco Insurance Co. of America* (1993), 258 Mont. 142, 145, 852 P.2d 565, 567-68, we stated that "[i]nsurance companies have a duty to act in good faith with their insureds, and this duty exists independent of the insurance contract and independent of statute. If this duty is breached the cause of action of the insured against the insurer sounds in tort." (Citations omitted.)**

**¶42. In *Stephens*, we reviewed an action brought by insureds against their property insurer. Writing for the Court, Justice McDonough noted that the facts giving rise to the claim predated the application of the Unfair Trade Practices Act and, therefore, the insured was entitled to bring common law claims, including a bad faith claim, against the insurer. In his analysis, Justice McDonough scrutinized the relationship between the insured and the insurer to determine whether a special relationship existed to allow the bad faith claim. In carefully evaluating the relationship between the insured and insurer against the five elements of *Story*, Justice McDonough concluded that such a special relationship existed:**

*Story adopted five elements to be applied in determining whether the parties have a special relationship:*

(1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit

motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Story*, 791 P.2d at 776.

When these five elements are applied to this case, the special relationship is established. First, in the insurance context, the insurer occupies the superior bargaining position and the insured in the inferior. This is because "in the insurance field the insured usually has no voice in the preparation of the insurance policy . . ." *Goddard*, 593 P.2d at 1047. There is a "great disparity between the economic positions of the parties to a contract of insurance. . . ." *Goddard*, 593 P.2d at 1047.

Second, the insured has a non-profit motive for entering into the insurance contract. "The insured seeks to purchase protection and security. This expectation is perhaps justified, if not entirely motivated, by insurers' advertisements promising security and freedom from worry." Graham and Luck, "The Continuing Development of the Tort of Bad Faith in Montana," 45 Mont.L.Rev. 43, 46 (1984).

Third, ordinary contract damages would not make appellants whole. Appellant Tom Stephens suffered from severe mental distress due to the problems with the insurance claim. He incurred certain medical expenses in connection with that distress.

Fourth, "at the time an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement of a release." *Goddard*, 593 P.2d at 1047. Finally, the fifth element applies because the insurer is the author of the insurance contract and is aware of the insured's vulnerability. "The special considerations existent in a consumer-held insurance contract do not apply to an ordinary contract between businessmen." *Goddard*, 593 P.2d at 1047.

*Stephens*, 258 Mont. at 145-46, 852 P.2d at 567-68. *The same reasoning applies here.*

**¶43. Thus, we conclude that appellants' allegations that Northwestern breach its implied duty of good faith and fair dealing survive.**

ISSUE 4

**¶44. Did the District Court err in granting summary judgment in favor of Northwestern on the breach of fiduciary duty claim?**

**¶45. In the District Court's opinion and order granting summary judgment, the relationship between the Greany Insurance Agency and Northwestern was examined to determine if Greany was an agent of Northwestern, thus making his acts and, more importantly, his omissions, imputable to Northwestern. Predictably, appellants maintain that a fair and complete evaluation of the relationship leads one to the inescapable conclusion that Greany was the agent of Northwestern. Just as predictably, Northwestern argues that the relationship was defined and limited and could not be construed as a relationship which would allow Greany's acts and omissions to be imputed to Northwestern.**

**¶46. It is clear that the District Court believed that Greany was at least an ostensible agent of Northwestern. In its final analysis, the District Court concluded that it made little difference whether an agency existed; however, the court referred to the following statutory references:**

**33-15-302. Policy must contain entire contract.** The policy, when issued, shall contain the entire contract between the parties, and neither the insurer or any insurance producer or representative thereof nor any person insured thereunder shall make any agreement as to the insurance which is not plainly expressed in the policy. This provision shall not be deemed to prohibit the modification of a policy, after issuance, by written rider or endorsement duly issued by the insurer.

Section 33-15-302, MCA.

**33-15-316. Construction of policies.** Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy.

Section 33-15-316, MCA. The court held that ostensible agency was irrelevant because the insurance policy represented the final expression of the negotiations and the intent of the parties.

**¶47. However, we see no correlation between appellants' claim that Northwestern breached a fiduciary duty by failing to disclose a policy change during renewal and the ultimate validity of the amended policy. The provisions in the insurance code are directed to the question of whether the policy can be verbally altered by the insurer's agent. If Northwestern's agent fails to disclose the change to the insureds' detriment, certainly such conduct may give rise to a tort action notwithstanding the above statutes.**

**¶48. In conclusion, we reverse the District Court's order for summary judgment on all the foregoing issues and remand this matter to the District Court for further proceedings consistent with this opinion.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

Justice W. William Leaphart, specially concurring.

¶49 I concur with the Court's opinion. However, I am puzzled as to why the parties have allowed this matter to come up on appeal without first asking the District Court to determine whether the initial 1989 policy would have provided coverage for the loss in question. If there was no coverage under the 1989 policy, then any subsequent "changes" further narrowing coverage would have no bearing or relevancy to Thomas' claim. As it is, the matter is presented to us with that basic question yet to be answered.

¶50 Thomas' cause of action is premised on a claim that Northwestern wronged them by not advising them that their policy had been "changed," i.e., that the pollution exclusion had been broadened such that they no longer had the pollution coverage they originally purchased. If on remand, the District Court determines that there was no coverage to begin with, Thomas' argument falls apart. In such event, our pronouncements on the law may well be rendered academic. In the interests of judicial economy, the threshold question of whether there was coverage in the first instance should have been raised by the parties in their motions for summary judgment so that the District Court could have addressed the issue and, perhaps, obviated the need for this appeal.

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray joins in the foregoing special concurrence.

/S/ KARLA M. GRAY

No

1. **1** We held that the Unfair Trade Practices Act does not apply to an action against an individual because the Act references only an insurer. Therefore, the common law applies. *See also Klaudt v. Flink* (1983), 202 Mont. 247, 659 P.2d 1065.