**Sally HANNON, Plaintiff,**

v.

**AVIS RENT A CAR SYSTEM, INC., a Delaware corporation, and Steven G. Hesslau, Defendants.**

**No. CV–97–065–BU–PGH.**

United States District Court, D. Montana, Butte Division.

June 16, 2000.

Bill Hanson, Hanson Law Office, Bozeman, MT, for plaintiff.

Tina L. Morin, Poore, Roth & Robinson, PC, Butte, MT, for defendant.

### MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Plaintiff, Sally Hannon ("Hannon"), instituted the above-entitled action seeking compensatory and punitive damages from defendants Avis Rent A Car System, Inc. ("Avis"), and Stephen G. Hesslau ("Hesslau"), alleging sex discrimination and retaliation in contravention of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*[1] Hannon's Complaint also advances claims predicated upon the law of the State of Montana, namely, claims for tortious and contractual breach of the covenant of good faith and fair dealing and negligent supervision against Avis, and tortious interference with contractual relations against Hesslau.[2] Presently before the court is the defendants' Motion for Summary Judgment. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

### BACKGROUND

Avis is a nationwide car rental company. It operates from three different types of facilities: franchises that operate under franchise agreements; independent agencies that operate under agency operator

---

1. Hannon invokes the subject matter jurisdiction of this court over her Title VII claims under 28 U.S.C. § 1343(a)(4) and 42 U.S.C. § 2000e–5(f).

2. Hannon invokes the subject matter jurisdiction of this court over her state law claims under 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

agreements; and corporate-owned stations operated by station managers employed by Avis.

Prior to October of 1992, Charles Stoddard ("Stoddard") owned and operated an Avis Franchise at Gallatin Field in Gallatin County, Montana. Hannon worked for Stoddard from 1976 until Avis repurchased the franchise from Stoddard in October of 1992. At about that time, Hannon entered into an Agency Operator Agreement with Avis under which she began operating the Avis facility at Gallatin. Field. Hannon and Avis continued in this relationship until Avis terminated her contract on September 30, 1996, after giving her the requisite 30 days notice under the agreement.

Hannon alleges Avis and Hesslau engaged in sex discrimination and retaliation against her in violation of Title VII. Specifically, she argues Hesslau, who was Avis' manager of the region that included Gallatin Field, engaged in sex discrimination and retaliation against her because of his gender-based animosity toward her. In this regard, Hannon argues Hesslau's behavior created a hostile environment that culminated in the termination of her contract with Avis. As alternative grounds for relief, Hannon argues Avis' and Hesslau's actions in terminating her contract violated Montana law.

Avis and Hesslau argue Hannon was an independent contractor, not an Avis employee, and is therefore not protected under Title VII. They further argue the alleged instances of sexual harassment upon which Hannon bases her claim are not sufficiently severe or pervasive to give rise to a cause of action under Title VII. Finally, they argue the termination of Hannon's contract was proper under the terms of the contract, and was in accordance with federal and Montana law.

## DISCUSSION

### 1. Title VII Claim.

■ The primary issue before the court with regard to Hannon's Title VII claim is whether Hannon was an employee or an independent contractor with Avis. While Title VII protects employees, it does not apply to independent contractors. *See Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 55, 145 L.Ed.2d 48 (1999); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 (9th Cir.1980). Thus, if Hannon was an independent contractor and not an employee, her Title VII claim necessarily fails.

In determining whether an individual is an employee or an independent contractor, courts apply the common law agency approach employed by the United States Supreme Court in *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).[3] Application of the common law agency approach allows courts to determine the extent to which the hiring party controls the "manner and means" by which the hired party accom-

---

3. The Ninth Circuit Court of Appeals has stated that the common law agency approach is "essentially indistinguishable from the approach previously used by this circuit in analyzing [an] 'employment relationship' for Title VII purposes." *See Adcock,* 166 F.3d at 1292, n. 3, *citing, Loomis Cabinet Co. v. Occupational Safety & Health Review Comm'n,* 20 F.3d 938, 941–42 (9th Cir.1994). The approach previously used in this regard stemmed from the court's decision in *Lutcher,* in which the court noted that the determination involved a "fact specific inquiry which 'depends on the economic realities of the situation.' " *Lutcher,* 633 F.2d at 883.

The primary factor under the *Lutcher* analysis is the extent of the employer's right to control the means and manner of the worker's performance. Other factors include, but are not limited to: the kind of occupation; whether the employer furnishes the equipment used and the place of work; the method of payment; whether the employer pays social security taxes; the manner in which the work relationship is terminated; and the intention of the parties. *See id.,* at n. 5.

While the common law agency approach is appropriate to this case, in this court's opinion application of either test to the facts here compel the conclusion that Hannon was an independent contractor, not an Avis employee.

plishes its work. *Darden,* 503 U.S. at 323, 112 S.Ct. 1344. The equally-weighted factors to be assessed include:

(1) the skill required;

(2) source of the instrumentalities and tools;

(3) location of the work;

(4) duration of the relationship between the parties;

(5) whether the hiring party has the right to assign additional projects to the hired party;

(6) the extent of the hired party's discretion over when and how long to work;

(7) the method of payment;

(8) the hired party's role in hiring and paying assistants;

(9) whether the work is part of the regular business of the hiring party;

(10) whether the hiring party is in business;

(11) the provision of employee benefits; and

(12) the tax treatment of the hired party.

*Darden,* 503 U.S. at 323–24, 112 S.Ct. 1344.

■ In light of the undisputed facts of record, assessment of the *Darden* factors in the *instant case* compels the court to conclude Hannon was an independent contractor, and not an Avis employee. The Agency Operator's Agreement extant between Hannon and Avis allowed for Hannon to "exercise managerial, entrepreneurial skills and independent judgment to the best of [her] ability" to ensure the greatest amount of revenue for both her and Avis. This broad discretion bestowed upon Hannon to run the business in the manner she deemed appropriate indicates a requisite skill level and level of control more consistent with that of an independent contractor than with that of an employee. Similarly, no provision in the agreement, and no

other evidence of record, indicates that Avis had the authority to assign Hannon additional projects other than those specified in the agreement, further indicating an independent contractor relationship.

Avis dictated to Hannon neither the hours she was to work, nor the duration of time she was to work. Avis compensated her on a commission basis and she received from Avis no salary, benefits or annual leave for her work. Avis did not pay Social Security taxes on Hannon's behalf, and, for federal income tax purposes, Hannon claimed all of her income as self-employment income during the term of the Agency Operator's Agreement. Hannon also had sole responsibility for hiring and paying her own employees and bore responsibility for providing them with any benefits and insurance required by law. These facts further indicate an independent contractor relationship.

Finally, the Agency Operator's Agreement explicitly states that Hannon is not an employee of Avis. Although this language is not dispositive of the issue, it reflects the parties' intention that Hannon was an independent contractor and not an employee. *Barnhart v. New York Life Ins. Co.,* 141 F.3d 1310, 1313 (9th Cir.1998) (contract containing clear language that individual would be considered an independent contractor, not an employee, supported finding of independent contractor status).

Because the court concludes that Hannon was an independent contractor and not an employee of Avis, Hannon's Title VII claim necessarily fails.[4] Consequently, Avis' motion for summary judgment is granted to the extent it relates to Hannon's Title VII claim.

### a. *Avis' Request for Attorney's Fees.*

Avis requests an award of attorney's fees if it prevails on its motion for summary judgment relative to Hannon's Title

---

**4.** Having reached this conclusion, the court need not address Avis' remaining arguments with regard to Hannon's Title VII claim.

VII claim. Having reviewed the record, the court concludes such an award is inappropriate in this case and, therefore, denies Avis' request.

### 2. Claims for Breach of the Covenant of Good Faith and Fair Dealing.

Hannon predicates her claim for breach of the covenant of good faith and fair dealing on her allegation that Avis failed to act honestly and within accepted commercial practices in terminating the Agency Operator's Agreement. She argues both that her "special relationship" with Avis entitles her to tort damages, and that Avis' breach of the covenant constitutes a breach of contract, which entitles her to contract damages.

### a. Claim for Tortious Breach of the Covenant.

Avis argues Hannon does not have the requisite "special relationship" with Avis needed for her to maintain a claim for tortious breach of the covenant of good faith and fair dealing under Montana law. In *Story v. City of Bozeman*, the Montana Supreme Court narrowed the scope of the common law tort of bad faith. 242 Mont. 436, 791 P.2d 767 (1990); *see also Thomas v. Northwestern Nat'l Ins. Co.*, 292 Mont. 357, 973 P.2d 804, 810 (1998). In *Story*, the court held that "the tort can be pursued in a contractual setting only where 'special circumstances' exist between the parties and the matter is not otherwise controlled by specific statutory provisions." *Thomas*, 973 P.2d at 810, *citing*, *Story*, *supra*.

*Story* adopted five elements to be applied in determining whether special circumstances exist that would give rise to a special relationship between the parties: (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, *i.e.*, to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Story*, 791 P.2d at 776.

■ A review of the record reveals Hannon is unable to satisfy, at a minimum, *Story's* second element necessary to establish the requisite "special relationship." It is indisputable that Hannon had, at least in part, a profit motive for entering into the Agency Operator's Agreement with Avis. Thus, Hannon is unable to proceed on her claim for tortious breach of the implied covenant of good faith and fair dealing against Avis. *See, e.g., First Security Bank & Trust of Miles City v. VZ Ranch*, 247 Mont. 453, 807 P.2d 1341, 1345 (1991) (no special relationship existed because there was a profit motivation, and, consequently, there was no tort of bad faith). Consequently, Avis' motion for summary judgment is appropriately granted to the extent it relates to Hannon's claim for tortious breach of the implied covenant of good faith and fair dealing.

### b. Claim for Breach Contract Arising from Breach of the Covenant.

Avis argues Hannon's breach of contract claim, arising from breach of the covenant of good faith and fair dealing, may be summarily dismissed because employment of the covenant is not appropriate in this case. Specifically, Avis argues the Agency Operator's Agreement permitted it to terminate the contract, without cause, upon 30 days written notice to Hannon. Avis argues because it followed the contract's express language in terminating the agreement, and because the covenant cannot serve to alter or nullify the express terms of a contract, the covenant is not implicated.

Avis' argument is defective, however, because the Agency Operator's Agreement

does not "expressly provide[ ] ... for termination without cause." Paragraph 6 of the Agency Operator's Agreement addresses termination of the contract. Subparagraph (a) of paragraph 6 provides:

> This Agreement shall be effective immediately upon its execution by both parties and shall continue in effect thereafter until terminated by either party by written notice delivered to the other not less than thirty (30) days prior to the termination date set forth therein.

Clearly, the contract is silent regarding whether a terminating party must have cause for terminating the agreement. Thus, the specific issue before the court is whether, in light of paragraph 6(a)'s language, the implied covenant operates to fill the gap to require Avis to have good cause to terminate the contract. This precise issue is one of first impression in Montana.[5]

■ Under Montana law generally, courts may imply that a covenant exists in all contracts that imposes upon the parties a duty to act honestly and in a commercially reasonable manner. *Story*, 791 P.2d at 775. The covenant requires every party to a contract to use any discretion conferred by the contract in an honest and commercially reasonable manner. *Id.*[6]; *see also Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir.1992) (noting the implied covenant requires a party, vested with discretion under the terms of the contract, to exercise that discretion reasonably, with proper motive and consistent with parties' reasonable expectations). Courts generally use the covenant as "gap filler" when a contract issue arises that the parties did not address in their agreement. *In re Kaplan*, 143 F.3d 807, 818–19 (3d Cir.1998) (noting terms of the parties' contracts "leave great room for discretion and thus for the application of the implied cov-

enant."); *Continental Bank v. Everett*, 964 F.2d 701 (7th Cir.1992).

In addressing the precise issue present here, the court is in accord with the line of reasoning that permits application of the implied covenant as a gap filler to require good cause to terminate when a contract's termination provision is silent regarding whether termination can be accomplished with or without cause. *See, e.g., Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 81 Ill.Dec. 156, 466 N.E.2d 958, 973 (1984) (stating in dicta that where a franchise contract is wholly silent on the issue of termination, "the implied covenant of good faith restricts franchisor discretion in terminating a franchise agreement to those cases where good cause exists"); *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736, 742 (1978) (finding implicit in a franchise contract for a term of years the "reasonable expectation," under "principles of good faith and commercial reasonableness," that the supplier will not arbitrarily or summarily terminate the franchise agreement); *Seegmiller v. Western Men, Inc.*, 20 Utah 2d 352, 437 P.2d 892, 894 (1968) (noting that when a contract is silent regarding whether it may be terminated without cause, "it seems fair and reasonable to assume both parties entered into the agreement in good faith, intending that if the service is performed in a satisfactory manner it will not be canceled arbitrarily.").

Of primary importance to the court in following this line of reasoning is the notion that when parties enter an agreement similar to the one extant in the instant case, they undoubtedly expect to commit time and resources to make the business successful. It would be manifestly unfair to permit one party to terminate the agreement, without cause, and thus reap

---

5. When presented with an issue of substantive law as to which there has not been a definitive ruling by the Montana Supreme Court, this court must predict how the Montana Supreme Court will rule if confronted with this issue of law. *Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); *Mols-* *bergen v. United States*, 757 F.2d 1016, 1020 (9th Cir.1985).

6. The "commercially reasonable" requirement is consistent with the standard applied to merchants under the Uniform Commercial Code. *Story*, 791 P.2d at 775.

the benefit of the other party's efforts in getting the business to a point where it is successful. A unilateral termination of the agreement would not comport with the reasonable expectations of the parties in entering the contract.

In the case *sub judice*, the contract does not expressly permit either party to terminate the contract without cause. The implied covenant, therefore, operates as a "gap filler," imposing upon the parties the duty to terminate only for good cause and in a commercially reasonable manner. The parties each had discretion to terminate the contract upon 30 days written notice to the other party. In terminating the agreement, under the facts of this case, the implied covenant imposed upon Avis the duty to exercise its discretion to terminate in an honest and commercially reasonable manner. *Id.* This conclusion is consistent with the justifiable expectations of the parties because Hannon certainly would be justified in expecting that Avis would not simply terminate the agreement for no reason. *See, e.g., Talley v. Flathead Valley Community College*, 259 Mont. 479, 857 P.2d 701, 707 (1993).

The next question, then, is whether Avis had good cause to terminate the agreement. Avis has offered several reasons for its decision to terminate, including, *inter alia:* Hannon's failure to rent vehicles at rates set by Avis; Hannon's allowance of use of the Avis fleet vehicles for personal use; and Hannon's unsatisfactory performance, including loss of market share. Hannon, on the other hand, contends Avis' reasons are disingenuous. She argues no valid business reasons exist for the termination. Rather, she believes the agreement was terminated because Hesslau harbored gender-based animosity toward her because she is an assertive female. Moreover, Hannon argues Hesslau did not like her and advocated for termination so that he would not have to work with her.

The parties' divergent theories for why the Agency Operator's Agreement was terminated may be gleaned from the evidence of record. This conflicting evidence gives rise to genuine issues of material fact which are appropriately left to the trier of fact and which, of course, preclude summary judgment. Accordingly, Avis' motion for summary judgment is denied to the extent it relates to Hannon's claim for breach of contract arising from breach of the implied covenant of good faith and fair dealing.

### 3. Claim for Tortious Interference with Contract.

Hesslau argues Hannon's claim for tortious interference with contract may be summarily dismissed primarily because, as Avis' agent, he was not a stranger to the contract between Avis and Hannon and only strangers to the contract may be held liable for tortious interference with the contract.

Hesslau correctly states the general rule in Montana that tortious interference with contractual or business relationships may be committed only by strangers to the relationships. *Bolz v. Myers*, 200 Mont. 286, 651 P.2d 606, 609 (1982). In this regard, corporate agents may interfere with or induce breach of the corporation's contracts or business relations with others. *Phillips v. Montana Education Ass'n*, 187 Mont. 419, 610 P.2d 154, 158 (1980). In so doing, however, they must act in good faith and in the best interests of the corporation. *Id.* In situations in which the agent acts for his or her "private benefit, or because of personal feelings and purposes relative to" the other party, an exception to the general rule is triggered and liability may be imposed upon the corporate agent. *Id.; see also Little v. Grizzly Manufacturing*, 195 Mont. 419, 636 P.2d 839, 842 (1981).

In the instant case, as noted *supra*, Avis and Hesslau have presented evidence demonstrating that the agreement with Hannon was terminated for valid business reasons, such as Hannon's unsatisfactory performance in operating the vehicle rental facility. Hannon, on the other hand, has

presented evidence that may be construed to indicate Hesslau advocated the termination because of personal animosity he had for Hannon. This conflicting evidence raises a genuine issue of material fact for resolution by the trier of fact. Consequently, Avis' motion for summary judgment is denied to the extent it relates to Hannon's claim for tortious interference with contract.

### 4. *Claim for Negligent Supervision.*

Avis argues Hannon's claim for negligent supervision may be summarily dismissed because the illegal acts in which Hesslau is alleged to have engaged with regard to Hannon were not reasonably foreseeable to Avis. Thus, Avis had no duty to Hannon to prevent Hesslau from engaging in the alleged acts. Moreover, Avis argues that even if it owed Hannon a duty, Hannon cannot prove that Hesslau engaged in any improper conduct that would give rise to a cause of action for negligent supervision.

Having reviewed the record, the court concludes genuine issues of material fact exist relative to this claim that preclude summary judgment. Accordingly, Avis' motion for summary judgment is denied to the extent it relates to Hannon's claim for negligent supervision.

### CONCLUSION

Based on the foregoing, Avis' motion for summary judgment is GRANTED in part, and DENIED in part, as set forth herein.

IT IS SO ORDERED.