CHIEF JUSTICE GRAY,
concurring and dissenting.
¶73 I concur in the Court’s opinion on all issues except Issue 4. With regard to Issue 4,1 concur to a limited extent with the result as applied to the bad faith cause of action, and write separately to provide a basis for that result, which strikes me as somewhat lacking in the Court’s opinion. I dissent from the Court’s conclusion in Issue 4 that the District Court did not err in denying Union Fidelity’s motion for summary judgment on Barbara’s fraud claim. I would reverse the District Court on that claim and remand for entry of judgment in Union Fidelity’s favor.
¶74 Both parties advance Thomas v. Northwestern Nat. Ins. Co., 1998 MT 343, 292 Mont. 357, 973 P.2d 804, in support of their positions regarding bad faith. The Court does not discuss Thomas, but it is my view that Thomas supports Barbara’s position that § 33-18-242(3), MCA, does not bar her bad faith cause of action insofar as it pertains to alleged pre-claim conduct by Union Fidelity.
¶75 In Thomas, a business and its owners (collectively, the business) purchased a commercial insurance policy in 1989 and renewed it annually through 1993. Thomas, ¶ 7. In 1990, the policy was amended to exclude coverage for pollution. Thomas, ¶ 10. A customer sued the business over a fuel oil spill that occurred in 1992, and the insurer refused to defend or indemnify the business. After the customer received judgment, the business sued for indemnification. Thomas, ¶ 8. The business alleged that, by failing to provide adequate notice of the amendment, the insurer acted negligently, breached an implied covenant of good faith and fair dealing and breached its fiduciary duty. Thomas, ¶ 11. The district court granted summary judgment to the insurer. It reasoned in part that § 33-18-242(3), MCA-which delineates certain actions which an insured may bring as a result of an insurer’s handling of an insurance claim and prohibits common law bad faith claims vis-a-vis the handling of a claim-precluded the business from *177 pursuing common law theories. Thomas, ¶¶ 12-13, 31.
¶76 On appeal, we determined that “the [UTPA] addresses the relationship between an insured and an insurance company once a claim has been filed,” and stated the business’ causes of action “pertain to events that occurred prior to the handling of the claim.” Thomas, ¶ 33. Noting the insurer’s argument that “suit was filed by appellants only after their demand for insurance coverage was denied,” we reasoned § 33-18-201, MCA-which generally prohibits unfair claim settlement practices-did not address the tort allegations raised in the complaint. Thomas, ¶ 34. Distinguishing cases involving “actual handling” of claims, we noted that “[h]ere, appellants allege pure common law claims without adding violations of the [UTPA].” Thomas, ¶ 36. We concluded that § 33-18-242(3), MCA, did not bar the common law causes of action. Thomas, ¶ 37.
¶77 Since Thomas, we have recognized that “§ 33-18-242(3), MCA, ‘explicitly prohibits bringing an action for bad faith in connection with the handling of an insurance claim.’ ” Watters v. Guaranty Nat. Ins. Co., 2000 MT 150, ¶ 51, 300 Mont. 91, ¶ 51, 3 P.3d 626, ¶ 51 (citation omitted), overruled on other grounds, Shilhanek v. D-2 Trucking, Inc., 2003 MT 122, ¶ 21, 315 Mont. 519, ¶ 21, 70 P.3d 721, ¶ 21. The distinction between pre-claim events in Thomas and claim handling in Watters is entirely consistent with the statutes and I would expressly apply it here.
¶78 In her complaint, Barbara asserted Union Fidelity “tortiously breached the implied covenant of good faith and fair dealing in connection with the application process and underwriting^]” On appeal, Barbara contends Union Fidelity committed bad faith during the application and pre-claim underwriting process by failing to define terms such as “good health,” failing to include health-specific questions on the application, and “ma[king] certain that neither rescission nor claim denial was discussed at the point of sale.” These allegations refer to conduct before the claim, not to the handling of the claim once made. Therefore, I would apply Thomas and conclude that Barbara may proceed with her bad faith action only in relation to Union Fidelity’s pre-claim application process and pre-claim underwriting.
¶79 Union Fidelity asserts, however, that “[t]here can be no dispute that [Barbara’s] claims arise from the denial of the insurance claim.” As mentioned above, we noted a similar argument in Thomas, ¶ 34, and stated the alleged torts at issue there were not contemplated in § 33-18-201, MCA. In my view, we improperly shifted the focus in Thomas from the insurer’s argument about when the tort accrued to an analysis of whether the alleged tort was covered by the UTPA. I *178 would not follow Thomas in that regard.
¶80 The first sentence of § 33-18-242(3), MCA, limits causes of action available to “[a]n insured who has suffered damages as a result of the handling of an insurance claim[.]” Our recognition of non-UTPA tort actions involving pre-claim conduct in Thomas indicates the “as a result of’ language refers to the relationship between the insurer’s conduct and the damages, rather than merely whether the damages arose before or after the claim. Indeed, as in Thomas, the insured’s damages in nearly every case involving pre-claim conduct will not arise until the insurer handles the claim. Pursuant to Thomas, therefore, it is my view that Barbara’s bad faith action may proceed to trial on the theory that the alleged damages occurred “as a result of’ Union Fidelity’s alleged pre-claim conduct.
¶81 Union Fidelity also asserts, however, that the UTPA “precluded” Barbara from alleging both UTPA violations and bad faith in her complaint, and it supports this assertion with our reference to “pirre common law claims” in Thomas, ¶ 36. In my view, our observation of the “pure common law claims” in Thomas did not establish a rule that a plaintiff must choose between asserting UTPA violations and common law torts. Indeed, Thomas did not involve alleged UTPA violations. Moreover, we recognized in Thomas, ¶ 35, that the UTPA is not an insured’s exclusive remedy. Finally, of course, Rule 8(e)(2), M.R.Civ.P., specifically allows a plaintiff to plead alternatively. Here, Barbara has alleged various causes of action, some with respect to different factual assertions. I would conclude the UTPA does not prevent her from doing so.
¶82 In summary, I concur in the Court’s conclusion that § 33-18-242(3), MCA, does not bar Barbara’s bad faith cause of action, but I would limit the scope of that action to Union Fidelity’s pre-claim conduct. Consequently, I disagree with the Court’s apparent adoption in ¶ 30 of Barbara’s argument that the prohibition against post-claim underwriting in § 33-18-215, MCA, relates to her bad faith allegation. I would conclude that, while she may assert post-claim underwriting in relation to some allegations, she may not do so in relation to the alleged pre-claim bad faith.
¶83 With respect to Barbara’s fraud cause of action, the Court notes in ¶ 55 that Barbara argues her fraud allegation is “well supported as she and Clarence relied upon Union Fidelity’s selling agent’s promise of coverage[.]” On appeal, Barbara points to the selling agent’s deposition testimony that he promised “peace of mind.”
¶84 A prima facie case of fraud consists of the following nine elements: (1) a representation; (2) the falsity of that representation; (3) the *179 materiality of the representation; (4) the speaker’s knowledge of the representation’s falsity or ignorance of its truth; (5) the speaker’s intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer’s ignorance of the representation’s falsity; (7) the hearer’s reliance on the truth of the representation; (8) the hearer’s right to rely on the representation; and (9) the hearer’s consequent and proximate injury or damages caused by relying on the representation. See In re Estate of Kindsfather, 2005 MT 51, ¶ 17, 326 Mont. 192, ¶ 17, 108 P.3d 487, ¶ 17 (citations omitted). I imagine insurance agents generally promise coverage at the time of sale, and I do not believe a reference to “peace of mind” constitutes a guarantee of coverage in all circumstances. I would not permit this fraud claim to proceed to trial solely because a selling agent generally promised coverage and the insurer later denied a specific claim.
¶85 More importantly, the Court does not address Union Fidelity’s reliance on Barbara’s deposition testimony that the salesperson did not talk her and Clarence into buying insurance and did not make any misrepresentations or misleading statements. Thus, through Barbara’s deposition, Union Fidelity established the absence of any genuine issue of material fact regarding, at least, the “falsity” and “reliance” elements of Barbara’s fraud claim.
¶86 The burden then shifts to Barbara to present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. See Hanson v. Water Ski Mania Estates, 2005 MT 47, ¶ 11, 326 Mont. 154, ¶ 11, 108 P.3d 481, ¶ 11 (citations omitted). From my perspective, Barbara’s reference to the agent’s “peace of mind” statement and the general promise of coverage relied on by the Court do not constitute material and substantial evidence raising a genuine issue of material fact with respect to the “falsity’ and “reliance” elements of the fraud claim. Therefore, in light of Barbara’s deposition testimony and the generic nature of the allegedly fraudulent representations, I dissent from the Court’s conclusion that Barbara may proceed with her fraud claim.
¶87 The Court’s response to this concurring and dissenting opinion relating to Barbara’s bad faith and fraud claims consists primarily of sweeping statements about my inability to recognize our standards of review of a district court’s granting of summary judgment and judgment as a matter of law. There is no question that I understand those standards. Nor is the Court correct that I have faulted it for not performing an in-depth analysis of the fraud and bad faith claims or “resolved” the underlying issues which ought to be tried.
*180 ¶88 With regard to the bad faith claim, I state clearly above that I concur in the result, but do not believe the Court presents an adequate analysis of whether the District Court erred in denying Union Fidelity’s motion for summary judgment in that regard. Yes, we determine on appeal whether the moving party met its burden and was entitled to judgment as a matter of law. That standard generally requires us, however, to actually make determinations based on the record and the law. The Court’s opinion on this portion of Issue 4 does neither.
¶89 The Court presents Union Fidelity’s arguments in one paragraph, followed by Barbara’s arguments in the next; the third paragraph properly sets forth the standards relating to summary judgment; and the fourth paragraph sets out the standards relating to judgment as a matter of law. The Court then immediately “holds” that the District Court did not err in denying the motion for summary judgment on bad faith or the motion for judgment as a matter of law because “there still remained genuine issues of material fact[,]” and “there was sufficient evidence to justify submitting those issues to the jury.” It further holds that § 33-18-242(3), MCA, does not bar Barbara’s bad faith claim. My concern with the Court’s opinion is that it sets forth nothing of record or of law in these regards.
¶90 What genuine issues of material fact or evidence sufficient to go to the jury has the Court located? What of the legal arguments and authorities advanced by the parties? Why does § 38-18-242(3), MCA, not bar the bad faith claim? These questions-and my attempt to provide legal analysis-are not failures on my part to recognize the standards relating to summary judgment and judgment as a matter of law; nor do I resolve in any way underlying issues which should go to the jury. The Court’s opinion-in my view-is simply devoid of the substantive analysis we generally include to give appropriate guidance to the parties and the trial court in this case, and practitioners and trial courts in future cases.
¶91 On the off chance that the Court truly is missing the point of my concurring and dissenting opinion-especially with regard to providing an analysis to serve as a basis for its holdings-it is appropriate to look to recent opinions by this Court on summary judgment issues. Since the end of February this year, we have issued more than a dozen published opinions addressing summary judgment issues. See, e.g., Hi-Tech Motors, Inc. v. Bombardier Motor Corp. of Am., 2005 MT 187, 328 Mont. 66, 117 P.3d 159; Bonilla v. Univ. of Mont., 2005 MT 183, 328 Mont. 41, 116 P.3d 823; Eves v. Anaconda-Deer Lodge County, 2005 MT 157, 327 Mont. 437, 114 P.3d 1037; Seven Up Pete Venture v. State, *181 2005 MT 146, 327 Mont. 306, 114 P.3d 1009; Richards v. Knuchel, 2005 MT 133, 327 Mont. 249, 115 P.3d 189; Cole v. Valley Ice Garden, L.L.C., 2005 MT 115, 327 Mont. 99, 113 P.3d 275; In re Dorothy W. Stevens Revocable Trust, 2005 MT 106, 327 Mont. 39, 112 P.3d 972; Gullett v. Van Dyke Const. Co., 2005 MT 105, 327 Mont. 30, 111 P.3d 220; Montana Mountain Products v. Curl, 2005 MT 102, 327 Mont. 7, 112 P.3d 979; Rolison v. Deaconess, 2005 MT 95, 326 Mont. 491, 111 P.3d 202; Carter v. Mississippi Farm Bureau Cas., 2005 MT 74, 326 Mont. 350, 109 P.3d 735; Valley Victory Church v. Sandon, 2005 MT 72, 326 Mont. 340, 109 P.3d 273; GRB Farm v. Christman Ranch, Inc., 2005 MT 59, 326 Mont. 236, 108 P.3d 507; Travelers Cas. v. Ribi Immunochem Research, 2005 MT 50, 326 Mont. 174, 108 P.3d 469. None of those opinions addresses summary judgment/judgment as a matter of law issues without either factual or legal analysis or both.
¶92 For these reasons, I cannot join the Court’s opinion on Issue 4.