No. 02-697

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 183

ROGER JOBE,

        Petitioner and Appellant,

    v.

CITY OF POLSON, a political subdivision
of the State of Montana,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake, Cause No. DV 2001-209
The Honorable Deborah Kim Christopher, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Gary D. Rice, Wold Law Firm, P.C., Polson, Montana

        For Respondent:

            Jack Jenks, Amy O. Duerk, Phillips & Bohyer, P.C., Missoula, Montana

Submitted on Briefs:  April 10, 2003

Decided:  July 13, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1	Roger Jobe (Jobe) was injured on June 20, 2001, when he fell through a damaged plank on the city dock in Polson.   In December 2001, he filed suit against the City of Polson (the City) for negligently maintaining the premises and for failing to warn him of this unsafe condition.  Both parties subsequently filed Motions for Summary Judgment.  On October 23, 2002, the District Court granted the City's Motion.  Jobe appeals.  We affirm in part and reverse and remand in part.

## ISSUES

¶2	We restate the issues on appeal as follows:

¶3	1) Did the District Court err in concluding that Jobe presented insufficient evidence for a jury to find that the City's conduct was willful or wanton?

¶4	2) Did the District Court err in ruling that Montana's recreational use statute, § 70-16-302, MCA, bars Jobe's negligence claim?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5	Sometime in April or May 2001, Bill Littlefield, the Superintendent of Parks, inspected the city dock in Polson.  He identified several boards on the boat piers that needed replacing and a hole along the retaining wall that needed repair.  He also examined the wooden T-shaped fishing dock and found no signs of damaged planks requiring replacement. He reported his findings to the then-mayor, Mike Lies.  Lies also inspected the dock the same day he received Littlefield's report and confirmed that no repairs to it were necessary.

2

¶6　On June 20, 2001, seventy-five year old Roger Jobe, his wife and brother were fishing off the city's wooden T-shaped dock as they had done many times before. Jobe's wife testified that as she, her husband and brother-in-law were proceeding down the dock to their desired fishing locations, she saw a hole in the dock's west end. She had not seen the hole two weeks earlier during a previous fishing excursion. She did not tell Jobe. Jobe fished beside his wife, who is confined to a wheelchair, for approximately an hour when he decided to move to the west end of the dock. Jobe, who has sight difficulties, failed to notice the hole in the dock. He fell through it and fractured his left foot.

¶7　Jobe did not initially report the incident or the broken plank to the City. The following day, while using his wife's electric wheelchair to get around their home, Jobe experienced another fall that broke his left hip. He testified in his deposition that his doctor speculated that Jobe's fall on the dock could have produced a crack in his hip which then broke with the second fall.

¶8　According to Littlefield, a few days before June 27, someone at city hall notified him that a plank on the west end of the wooden dock needed to be replaced. He testified that he "probably" inspected the dock the day he was notified or the following day. During his inspection, he located a plank that was rotten and had a twelve to fourteen-inch long hole in it that was approximately as wide as the plank. He testified that the board "appeared to be more rotten than broken." When specifically asked if the board was broken in addition to being rotten, he answered that he did not recall but that the board was a full intact plank. On June 27, Littlefield purchased replacement boards and he and a co-worker whose identity

3

he was unsure of installed the new board that day or the next. Littlefield testified that while he concluded that the rotten hole in the plank represented a hazard, he did not put any barricades or warnings around the hole between the time he inspected it and the time he repaired it.

¶9 In December 2001, Jobe filed suit against the City for failing to adequately maintain the dock and for failing to warn him of a "known" danger. Both parties filed Motions for Summary Judgment. The District Court, in granting the City's Motion, concluded that Jobe presented no evidence to support his claim that the City was aware of the defective board before June 20, 2001, or that the City acted "willfully" or "wantonly." The court further concluded that the Montana Recreational Use Statute, § 70-16-302, MCA, barred Jobe's negligence claims. Jobe appeals.

## STANDARD OF REVIEW

¶10 This Court's standard of review in appeals from summary judgment rulings is *de novo*. We review a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. In proving that summary judgment is appropriate,

the movant must demonstrate that no genuine issues of material fact exist. Once this has been achieved, the burden shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of fact does exist. If the district court determines that genuine issues of fact do not exist, the court must then determine whether the moving party

4

is entitled to judgment as a matter of law. This is a legal determination that we review for error. *Tvedt v. Farmers Ins. Group of Cos.*, 2004 MT 125, ¶¶17-18, 321 Mont. 263, ¶¶ 17-18, 91 P.3d 1, ¶¶ 17,18 (citations omitted). Because summary judgment is an extreme remedy which should not be a substitute for a trial on the merits if a material factual controversy exists, all reasonable inferences which can be drawn from the evidence presented should be drawn in favor of the non-moving party. *Sherner v. Conoco, Inc.*, 2000 MT 50, ¶ 9, 298 Mont. 401, ¶ 9, 995 P.2d 990, ¶ 9.

## DISCUSSION

¶11 Jobe argues that the City had knowledge of the damaged and dangerous plank before the date of his accident and that it did nothing to warn him of the danger or protect him from it. He asserts that Littlefield, "observed the plank in question more than a week *before* the accident with a large 12"-14" rotted hole in it."

¶12 Conversely, Littlefield stated in his deposition that while he could not remember the precise date, it was a few days before June 27 that he was notified of the damaged board, at which time he inspected it, and noted that it had a large rotted hole in it[1]. As stated above, he could not recall whether it was broken as well but stated that the board was still attached to the dock on both ends when he inspected it. On June 27 or 28, he purchased the wood and replaced the plank.

---

[1] Littlefield subsequently submitted a sworn affidavit that indicated unequivocally that he inspected the dock after June 20.

5

¶13 Jobe maintains that the affidavit of Loyal Goldeski, another recreational user of the dock, supports his claim that the City knew of the broken plank before Jobe's accident. Goldeski stated that during June 2001, he frequently fished off the west end of the dock, and that sometime during the month of June, he saw the damaged plank. At the time he first saw it, both ends of the board remained attached to the north and south ends of the dock but the plank was broken near the center with one of the pieces angled down toward the water. He further testified that the board remained in this condition for "at least" a week before it was repaired. There was no testimony that Goldeski reported the broken board to the City.

¶14 Jobe argued to the District Court and again to this Court that the evidence supports the following chronology of events: Upon notice of a damaged board, Littlefield inspected the dock before June 20 and saw a rotten and dangerous but unbroken board. At some later date, Goldeski saw the plank which by that time had broken through but was still attached at both ends. The plank remained in this dangerous condition for at least one week. On June 20, Jobe fell through the hole created when part of the plank became completely dislodged from the dock. Despite having notice of the rotten board, Littlefield nonetheless waited until June 27 or June 28 to repair the board.

¶15 Jobe maintains that if Littlefield had actually inspected the plank a few days before June 27 but after he fell through it on June 20, he would not have found an intact plank but rather the gaping hole left in the board as a result of Jobe's June 20 accident. He deduces,

6

therefore, that if Littlefield's recollection of the condition of the board is accurate, Littlefield had to have inspected it before June 20.

¶16 Jobe further argues that the City's conduct was "willful and wanton." He maintains that the City negligently inspected the dock in June 2001, that it discovered the dangerous board before June 20, 2001, and that it did nothing to warn him or protect him from injury. He asserts that such conduct constitutes "willful and wanton misconduct." The question of whether such conduct could be considered willful and wanton is important because this case is controlled by Montana's recreational use statute. Section 70-16-302(1), MCA, provides:

> (1) A person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct . . . .

This statute applies because it is undisputed that Jobe was permissively using property owned by the City for recreational purposes without paying any consideration for the privilege.

¶17 As correctly observed by the District Court, the term "willfully" is defined by statute. Section 1-1-204(5), MCA, states:

> "Willfully," when applied to the intent with which an act is done or omitted, denotes a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law, to injure another, or to acquire any advantage.

7

¶18 "Wanton," on the other hand, does not have a statutory definition, but in previous cases we have held it to be synonymous with "reckless." In *Wollaston v. Burlington Northern, Inc.*, we defined willful, wanton, or reckless conduct as an act for which "it is apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and [the defendant] acted with such indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetuate it." *Wollaston* (1980), 188 Mont. 192, 198, 612 P.2d 1277, 1280 (citation omitted).

¶19 The District Court concluded that "the uncontradicted evidence clearly shows that [Jobe's] accident and alleged damages were not caused by willful or wanton conduct." This conclusion was based, in whole or in part, on the court's determination that the City had no knowledge of the damaged board before June 20, 2001. However, we cannot conclude, under the different fact scenarios that could reasonably be supported by the evidence, that it was conclusively shown that the City had no knowledge of the damaged board before June 20, 2001.

¶20 We acknowledge that proof of conduct reaching a level of willfulness or wantonness may be difficult. However, we must construe the evidence in a light most favorable to Jobe when reviewing the propriety of summary judgment. Given the reasonable inferences that could be drawn from the evidence, a trier of fact could conceivably conclude that Jobe's scenario is correct, and that the City knew of the broken plank and the dangers it presented before Jobe fell, and yet consciously delayed making the necessary repairs. As long as such

8

inferences could be drawn in favor of Jobe as the non-moving party, it is error to grant summary judgment. *Sherner*, ¶ 9. Moreover, given the differing versions of events, the credibility of Jobe, Goldeski and Littlefield is at issue. Questions of credibility are rightfully within the jury's realm. *Graf v. Continental Western Ins. Co.*, 2004 MT 105, ¶ 8, 321 Mont. 65, ¶ 8, 89 P.3d 22, ¶ 8.

¶21 Jobe also argues that the District Court erroneously held that his negligence claim was barred under Montana's recreational use statute, § 70-16-302(1), MCA. He asserts, among other things, that this statute should not be applied to protect the City from liability for acts or omissions voluntarily undertaken by the City. We decline to narrow the scope of § 70-16-302(1), MCA, as requested by Jobe. The legislature specifically provided that a landowner would be liable only for "injury to person or property for an act or omission that constitutes willful or wanton misconduct." The legislature did not create an exception for entities voluntarily undertaking duties in an effort to make properties safe for recreational purposes. As noted by the Ninth Circuit when reviewing a case involving the Kansas recreational use statute, had "[the legislature] wanted to provide for additional exceptions, such as liability for negligent inspections, it could have so stated." *Palmer v. U.S.* (1991), 945 F.2d 1134, 1137 (citation omitted). *See also Simchuk v. Angel Island Community Ass'n.* (1992), 253 Mont. 221, 833 P.2d 158 and *Saari v. Winter Sports, Inc.*, 2003 MT 31, 314 Mont. 212, 64 P.3d 1038. A well-established rule of statutory construction is "not to insert

what has been omitted or to omit what has been inserted." Section 1-2-101, MCA; *Saari*, ¶ 22.

¶22 Additionally, Jobe argues that the city dock, being a "primarily" (rather than "casual") recreational facility, should be subjected to a heightened risk of liability by virtue of the economic benefits the City derives from having a publicly-accessible fishing dock. He maintains that such public facilities attract users, tourists, and residents who, in turn, become patrons of local merchants who, in turn, pay taxes and salaries of the public employees responsible for inspecting and maintaining the dock. This argument apparently is directed at the "valuable consideration to the landowner" provision of the statute. Section 70-16-302, MCA. Jobe argues that because the City is deriving a "general" economic benefit from the dock's usage, the statute should not be applied against him in his negligence action. A similar argument was presented, and rejected, in *Saari*.

¶23 In *Saari*, a group of young people went sledding at Big Mountain Resort, owned by Winter Sports, Inc. (WSI) at a time when the resort was closed to the public. They paid nothing for the use of the sledding hill and did not rent or purchase any equipment from WSI. During the evening, Saari had a sledding accident and suffered serious injuries from which she later died. Her parents sued WSI, arguing, among other things, that despite their daughter and her companions paying nothing to sled at the facility, WSI had, nonetheless, derived a benefit by allowing their facility to be used in this manner. They argued that

10

persons using the resort after hours would be more likely to use it during operating hours, thus paying fees and purchasing food and equipment. *Saari*, 314 Mont. 212, 64 P.3d 1038.

¶24 We rejected this argument, observing that Saari's parents presented no legal authority in support of the proposition that the economic benefit received by WSI when paying patrons use WSI's property for their own recreational pleasure, constituted valuable consideration given on Saari's behalf for her use of the property on the night in question. *Saari,* ¶ 14. Likewise, Jobe has advanced no legal authority to support his claim that the general economic benefits the City enjoys from having a publicly-accessible fishing pier constitutes "valuable consideration" for his use of the property.

¶25 Section 70-16-302(1), MCA, expressly states that, with the exception of willful and wanton misconduct, a landowner owes no duty of care with respect to the condition of the property to a gratuitous recreational visitor. The intention of this statute is to "grant a landowner relief from liability to persons gratuitously entering land for recreation purposes." *Simchuk,* 253 Mont. at 226, 833 P.2d at 161. A landowner's relief from liability can only be divested through "willful and wanton misconduct."

¶26 In summary, we conclude that the District Court erred in entering summary judgment on Jobe's claim that the City's failure to timely repair the damaged board or warn him of its dangers constituted willful and wanton misconduct, and remand this question for trial. We affirm the District Court's conclusion that the recreational use statute bars Jobe's negligence claims.

/S/ PATRICIA O. COTTER

We Concur:

11

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

/S/ JAMES C. NELSON
/S/ JOHN C. McKEON
Honorable John C. McKeon, District Court Judge
sitting for former Justice Terry N. Trieweiler