No. 03-378

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 106

IN RE: THE DOROTHY W. STEVENS
REVOCABLE TRUST

THOMAS E. STEVENS and WILLIAM G. STEVENS,

     Petitioners and Appellants,

  v.

WHITNEY STEVENS; VICTOR KING; ROBERT T.
STEVENS, JR.; VICTOR E.R. "NED" KING; and
MARK STEVENS,

     Respondents and Respondents,

MELANIE STEVENS READ; CHANDRA VAYU STEVENS READ;
ELIZABETH STEVENS READ; and JEREMY STEVENS READ;
by and through their Guardian Ad Litem, Melanie Stevens Read;
JAMILAH STEVENS READ DECKER; AARON STEVENS
READ; SARA SOLAIMANIAN; SHAHIN SOLAIMANIAN;
and SHIVA SOLAIMANIAN; by and through their Guardian Ad
Litem, Sara Solaimanian; MARK W. STEVENS (individually);
ANNALYN M. SWAN; EMMELYN SWAN STEVENS; and
JULIA PHILIPPA STEVENS; by and through their Guardian Ad
Litem, MARK W. STEVENS; DAVID W. STEVENS; JANICE L.
JENKINS; ALEXANDER WHITNEY STEVENS; and ABIGAIL
CYBIL STEVENS; by and through their Guardian Ad Litem, David W.
Stevens; and J. WHITNEY STEVENS,

     Intervenors and Cross-Complainants.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                  In and For the County of Wheatland, Cause No. DP 2001-08,
                  Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Mark Parker and Casey Heitz, Parker Law Firm, Billings, Montana

       For Respondents:

Ronald F. Waterman, Gough, Shanahan, Johnson & Waterman, Helena, Montana

Gail Goheen, Attorney at Law, Hamilton, Montana (Intervenors)

Submitted on Briefs: December 19, 2003

Decided: April 26, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

Thomas Stevens and William Stevens appeal from the order entered on January 3, 2003, by the Fourteenth Judicial District Court, Wheatland County, granting summary judgment to the Respondents. We affirm.

The following dispositive issues are raised on appeal:

1. Did the District Court err by granting summary judgment in favor of Respondents on the petition for division of trust?

2. Did the District Court err by denying summary judgment in favor of Petitioners?

BACKGROUND

Dorothy W. Stevens (Dorothy) created the Dorothy W. Stevens Revocable Trust (Trust) on June 24, 1988. The Trust assumed title to all assets and real estate associated with two ranches–the American Fork Ranch and the Big Elk/Lebo Ranch–which Dorothy and her late husband had acquired. Dorothy was the original beneficiary under the Trust for her lifetime, but upon her death, her four sons–Robert, Whitney, William, and Thomas–were named as equal beneficiaries of the Trust and were to receive "all the net income available after paying and reserving sufficient funds for the expenses of management of the trust estate and administration of the trust." The Trust provided that nothing prevented the four original beneficiaries from assigning or transferring their individual interests in the Trust, or fraction thereof, to others.

Upon Dorothy's death, which occurred on December 4, 1988, the Trust could only be terminated, pursuant to Article 4 thereof, under limited circumstances:

> Upon the death of the Grantor, the trust may only be terminated by the mutual agreement of a majority of the Trustees and the trust beneficiaries entitled to 51% of the distributable income of the trust. If not previously terminated, this trust shall in all events terminate upon the death of the last to die of the Grantor and the Grantor's sons. Upon termination, the trust estate shall be distributed to the beneficiaries or

3

their successors in interest then entitled to the income from the trust in accordance with their proportionate right to receive income from the trust estate.

7    The Trust further clarified that the death of any of Dorothy's sons would not terminate the Trust, but that the deceased son's interest would pass in accordance with his estate directives or by intestate succession.

8    In June of 1989, by unanimous agreement of the beneficiaries and trustees as then constituted, the income distribution provision of the Trust was amended to provide that the beneficiaries would receive all income from the trust estate:

After paying or reserving sufficient funds for (1) the expenses of management of the trust estate, (2) the acquisition of additional or substitute ranch assets for the trust, and (3) the administration of the trust (said reservation of funds to be at the sole discretion of the trustees) . . . .

9    At the time this matter was initiated in 2001, the Trust had six trustees, including among them Robert, Whitney, and Thomas. William has never been a trustee. Together, Thomas and William own over 51 percent of the distributable income interest in the Trust. However, this interest alone does not authorize them to terminate the trust, because, as noted above, the Trust additionally requires the approval of a majority of trustees, which agreement has not existed.

10    Thomas and William became dissatisfied with the management of the Trust and the ranches and filed a petition with the District Court to sever the Trust into two separate trusts. One would encompass the American Fork Ranch and would remain under the control of Robert and Whitney and the other trustees and beneficiaries with allied interests (collectively, Respondents). The other trust would encompass the Big Elk/Lebo Ranch and be under the control of Thomas and William. Alternatively, if the court did not divide the Trust, they requested the court to dissolve the Trust,

4

remove all trustees, and distribute Trust assets. Thomas and William saw this as a reasonable settlement of the disagreement within the family about the management of the Trust assets. The Trustees opposed the petition, and counterclaimed against Thomas for indebtedness of approximately $400,000 then due. The additional beneficiaries of the Trust, to whom the four sons had assigned fractional interests of the Trust, moved and were granted leave to intervene in the matter.

11    A bifurcated bench trial was ordered, the first trial to decide the propriety of the division requested by the petition, and a second trial to determine the method of such division, if necessary. The first trial was scheduled to begin on January 6, 2003. Following discovery, Respondents moved for summary judgment, which was joined by the Intervenors. The District Court issued a ruling on January 3, 2003, stating:

> This ruling comes on the eve of trial, after all discovery is complete and without any showing by Petitioners that they require additional discovery to respond to the present motion. Accordingly the District Court must conclude that the evidence marshaled by the Respondents and Intervenors in their Motion for Summary Judgment is the evidence as a whole which would be presented in this matter. As such, there is no reason to continue forward since at trial, presenting the same evidence would result in concluding the trial at the close of Petitioners' evidence.

12    The District Court concluded that Respondents and Intervenors were entitled to judgment as a matter of law and entered summary judgment in their favor. Thomas and William appeal. The counterclaim against Thomas for indebtedness was resolved by stipulation and is not an issue herein.

STANDARD OF REVIEW

5

"We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court." *Cole ex rel. Cole Revocable Trust v. Cole*, 2003 MT 229, ¶ 8, 317 Mont. 197, ¶ 8, 75 P.3d 1280, ¶ 8. Rule 56, M.R.Civ.P., provides, in part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> In proving that summary judgment is appropriate, the movant must demonstrate that no genuine issues of material fact exist. Once this has been achieved, the burden shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of fact does exist. If the district court determines that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. This is a legal determination that we review for error. Because summary judgment is an extreme remedy which should not be a substitute for a trial on the merits if a material factual controversy exists, all reasonable inferences which can be drawn from the evidence presented should be drawn in favor of the non-moving party.

*Jobe v. City of Polson*, 2004 MT 183, ¶ 10, 322 Mont. 157, ¶ 10, 94 P.3d 743, ¶ 10 (citations omitted).

"Our standard of review for a question of law is plenary." *Collection Bureau Services, Inc. v. Morrow*, 2004 MT 84, ¶ 6, 320 Mont. 478, ¶ 6, 87 P.3d 1024, ¶ 6. "We review a district court's legal conclusions for correctness." *Generali-U.S. Branch v. Alexander*, 2004 MT 81, ¶ 17, 320 Mont. 450, ¶ 17, 87 P.3d 1000, ¶ 17.

DISCUSSION

**1. Did the District Court err by granting summary judgment in favor of Respondents on the petition for division of trust?**

6

Thomas and William first argue that the District Court erred in not allowing this matter to proceed to trial and thereby violated the long-held principle that summary judgment is not a substitute for trial. They assert, in sum, that at trial the District Court could have determined "that substantial evidence supported a finding that the Trust could be divided" in accordance with the statutes governing trusts. However, the record reveals no conflict in material facts before the District Court, and thus, consideration of whether Respondents were entitled to judgment as a matter of law was appropriate. While a trial may have provided an additional opportunity to offer theories or proposals about how the Trust corpus could be divided, such proposals were not presented to the District Court as issues of material fact and did not preclude summary judgment on whether the statutory requirements for division had been satisfied. Even if it were conceded that such proposals contained questions of fact, those questions, under the District Court's bifurcation order, would have been more properly raised within the second trial, which was to address the method of dividing the Trust. Thus, it was appropriate for the District Court to consider summary judgment in this instance. Indeed, under the final issue raised by Thomas and William herein, they argue that this Court should order that summary judgment be entered in *their* favor, in view of evidence they describe as "uncontroverted."

Thomas and William further argue that § 72-33-416, MCA, which authorizes a court to order a trust division, necessitates a trial whenever trustees and beneficiaries have a disagreement about a trust, because of the inherent discretion in trust decisions, making summary judgment inappropriate for nearly all trust matters. However, we conclude that trust matters are subject to the same principles of summary judgment under Rule 56, M.R.Civ.P., as other matters.

Section 72-33-416, MCA, under which Thomas and William sought relief in the District Court, provides as follows:

> **72-33-416. Division of trusts.** On petition by a trustee or beneficiary, the court, for good cause shown, may divide a trust into two or more separate trusts, if the court determines that dividing the trust will not defeat or substantially impair the accomplishment of the trust purposes or the interests of the beneficiaries.

Thus, in order to satisfy the statute, Thomas and William had the burden of demonstrating that (1) there was good cause to divide the trust, (2) such division would not defeat or substantially impair the Trust's purposes, and (3) the division would not defeat or substantially impair the interests of the beneficiaries.

In support of their position, Thomas and William argue that (a) Whitney in his capacity as trustee misunderstood the nature of their interest in the Trust, (b) the brothers disagreed about how the ranches should be managed, (c) a letter from a family attorney in 1995 had suggested severing the properties, (d) the ranches have always been understood to be divisible, and (e) that the income-generating purpose of the Trust, designed to favor the original beneficiaries–that is, Dorothy's four sons–has been abandoned by the Trustees in favor of planning for the benefit of successor beneficiaries. They also note that, over time, the number of beneficiaries has increased and those parties moved throughout the country, further justifying division.

The District Court noted that the first consideration to be addressed for proper application of § 72-33-416, MCA, is the purpose of the trust as intended by the trustor. After analyzing the trust documents, it reasoned:

> [T]he purposes of the trust were not to provide for the general welfare and benefit of the beneficiaries, but rather to preserve the ranch property, manage the ranch, provide income to the extent it is available to the income beneficiaries, and eventually, following the deaths of all of the four brothers, to pass the ranch property to their assignees or those who inherited from them.
>
> . . . .
>
> . . . Petitioners have failed to realize that this is not the classic trust designed to attend to the general welfare and/or special financial needs of the beneficiaries, with

8

the common provisions for beneficiaries' right to receive not only income, but invade the corpus of the trust to the extent necessary. The fact that Petitioners may want more money, and in their assessment need more money, or have "done without all their lives" are not arguments which are adequate or even begin to serve as grounds for ignoring the requirements of the trust at issue.

We first note that one of Appellants' arguments in support of division–that the income-generating purpose of the Trust "has been abandoned"–is inconsistent with the District Court's statement that the uncontroverted evidence showed that $600,000 of income has been distributed to the beneficiaries. That statement is not contested on appeal.

Section 72-33-416, MCA, provides an equitable remedy which places division of a trust within the court's discretion (". . . the court, for good cause shown, *may* divide a trust . . . ." (emphasis added)). After considering the reasons for division offered by Thomas and William, either individually or collectively, and the District Court's analysis thereof, we cannot conclude that the District Court erred in its assessment of the Trust's purposes, or in the exercise of the discretion provided by the statute. Various provisions of the Trust indicate that Dorothy intended the ranches to be preserved and managed for the benefit of her descendants until her four sons had passed away, at which time the Trust property would pass to the succeeding beneficiaries. For instance, the Trust requires the trustees to employ a ranch manager, forbids sale of the real estate prior to its termination without approval by the trustees and a majority of the income beneficiaries, and provides for payment of income to the beneficiaries only after expenses associated with managing the ranches, including reservation of funds for acquisition of additional assets, have been paid. Clearly, the purposes of the Trust extended beyond mere income generation to current beneficiaries, and the assertion by Thomas and William that the purposes of the Trust have been abandoned is simply not borne out by the record.

Thomas and William point out that the Official Comments to § 72-33-416, MCA, suggest that a division of a trust is appropriate when family members disagree or a beneficiary moves to a different part of the country, as is the case here. However, although the Comments provide helpful guidance, the statute itself requires that the trial court must make a determination of good cause in each case, which requires consideration of the individual circumstances, and then a discretionary call. In other words, not every situation involving family disagreements or moves by beneficiaries will necessarily constitute good cause for a trust division. Here, Thomas and William have not demonstrated that the District Court's conclusion of law–that good cause did not exist to divide the Trust–was incorrect, even though evidence of family disagreement and beneficiary moves existed in this case.

Finally, Thomas and William contend that the District Court erred as a matter of law by describing the succeeding beneficiaries as "remaindermen." They maintain that they do not have life estates in the Trust, to which remaindermen will succeed, but rather, they have "perpetual" interests in the Trust, as evidenced by their ability to sell or assign their interests to anyone of their choosing, and that the court erred by not recognizing this interest. Thomas and William argue therefrom that the District Court misunderstood the nature of the interests in this matter, and therefore granted greater protection to the succeeding beneficiaries than granted by the Trust itself.

Thomas and William have interests in the Trust that entitle them to certain trust income, which interests they may assign to another while they are living or pass upon their death. They do not individually own or control the corpus–the ranches. Their interest in the Trust is not perpetual, because the Trust will terminate upon the death of all the brothers, at which time the income interest will cease and the corpus will be distributed to the beneficiaries who have succeeded to the brothers' interests, or their assigns.

10

Given these circumstances, it is understandable that the District Court would use the analogy of remaindermen to describe the beneficiaries that remain after the death of the brothers. The District Court reasoned as follows:

> The third prong of the three requirements which Bill and Tom need to establish under Section 72-33-416 MCA is that dividing the trust will not defeat or substantially impair the interests of the beneficiaries. In the brief submitted on behalf of the Petitioners, Tom and Bill seem to imply that they are the only beneficiaries of the trust at issue because they are the "majority" beneficiaries. In their brief, Petitioners also spend efforts arguing that the property at issue here is not held in the form of a life estate with remaindermen (hence implying that only the income beneficiaries count). While technically Bill and Tom may be right as to the "life estate/remainder" terminology, conceptually these terms are quite applicable in the instant case. The Petitioners in this case, Tom and Bill, as well as their brothers, Bob and Whitney, are beneficiaries, but only to the extent of an income interest and only to the extent their interests have not been assigned to others. At the present time, Intervenors have approximately 32% of the income beneficiary interest. Those who will receive the corpus of trust at the time of the death of the last of the four brothers are the income assignees, or to the extent no assignment has been made during the brothers' lifetimes, the beneficiaries under their wills (or intestate laws, if applicable). It is the ranch corpus that passes to said persons, and as such they are certainly analogous to remaindermen.

Thomas and William mistake the court's analogy to remaindermen as an inappropriate application of trust and property law, but it is not. While Thomas and William are technically correct that the succeeding beneficiaries are not remaindermen, this technical distinction was noted by the District Court itself, and we find no error in the analogy it employed. The District Court thus properly entered summary judgment in favor of Respondents.

*2. Did the District Court err by denying summary judgment in favor of Petitioners?*

Because we conclude that the District Court did not err in entering summary judgment in favor of Respondents, we need not reach this issue.

Affirmed.

/S/ JIM RICE

We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON