No. 04-764

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 157

HELEN EVES, individually and as personal
representative of the Estate of Zachary Eves Bear
Don't Walk, Deceased, and for the heirs of said Estate,

        Plaintiff and Appellant,

  v.

ANACONDA-DEER LODGE COUNTY,
and John Does 1 through 10,

        Defendants and Respondents.


APPEAL FROM:    The District Court of the Third Judicial District,
                     In and For the County of Deer Lodge, Cause No. DV 2003-12,
                     Honorable Ted L. Mizner, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Edward Moriarity and Shandor Badaruddin, Moriarity, Gooch,
                Badaruddin & Booke, Missoula, Montana

                Ann Moderie & James Manley, Manley Law Firm, Polson, Montana

        For Respondents:

                Thomas M. Welsch, Poore, Roth & Robinson, Butte, Montana


                             Submitted on Briefs:  May 11, 2005

                                     Decided:  June 21, 2005

Filed:

_____
                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Helen Eves, on behalf of her deceased son Zachary Eves Bear Don't Walk (Zachary), appeals from the grant of summary judgment to Anaconda-Deer Lodge County (County). We affirm.

¶2     We address the following issue on appeal:

¶3     Whether a special relationship existed between the County and Zachary such that the County had a duty to protect him from harm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶4     Zachary voluntarily committed himself to the Montana State Hospital (Hospital) at Warm Springs in late 1996. On March 3, 1997, Zachary, without telling anyone, left the hospital grounds and walked into the countryside. The temperature that day was approximately 37 degrees, and snow was on the ground. Once the Hospital's staff discovered Zachary had left, the nursing supervisor telephoned local law enforcement to report his disappearance. She reported to the dispatcher that she was concerned with Zachary's ability to care for himself and asked if county police could locate him. The dispatcher told the nursing supervisor that, because Zachary was a voluntarily committed patient, the police had no legal basis to stop and detain him. County police officer Daniel Blume was notified of Zachary's disappearance, but he did not initiate a search. Instead, Blume kept lookout for Zachary during his routine patrol of the general area where Zachary was believed to be. Blume did not see any signs of Zachary. The nursing supervisor did not ask for a search and

rescue operation, nor is there any indication that the dispatcher advised against such a request.

¶5 Zachary's body was found several weeks later in a field approximately six miles from the Hospital. An autopsy report stated that he died of exposure one to three days after he left the Hospital.

¶6 Helen Eves brought this suit against the County asserting wrongful death and survivorship claims against the County. She argued that the County owed a duty to try to find Zachary and that it breached that duty. The County moved for summary judgment, and the District Court granted its motion. Eves now appeals.

## STANDARD OF REVIEW

¶7 We review a grant of summary judgment *de novo*. We apply the same criteria as the district court according to Rule 56, M.R.Civ.P. *Gullett v. Van Dyke Const. Co.*, 2005 MT 105, ¶ 11, 327 Mont. 30, ¶ 11, 111 P.3d 220, ¶ 11. Summary judgment shall be granted if the evidence filed with the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), M.R.Civ.P.

## DISCUSSION

¶8 *Whether a special relationship existed between the County and Zachary such that the County had a duty to protect him from harm.*

¶9 Generally, government officials do not owe a duty to specific members of the public, but only to the public as a whole. This rule of law is known as the "public duty doctrine."

3

*Nelson v. Driscoll*, 1999 MT 193, ¶ 21, 295 Mont. 363, ¶ 21, 983 P.2d 972, ¶ 21. Ordinarily the County would not have owed Zachary a duty, such as searching for him and making sure no harm came to him. However, this Court has recognized exceptions to the doctrine. Specifically, an exception "arises when there exists a special relationship between the police officer and an individual giving rise to a special duty that is more particular than the duty owed to the public at large." *Nelson*, ¶ 22 (citations omitted). We have recognized four circumstances where a "special relationship" may arise. *Nelson*, ¶ 22.

¶10     Eves argues that County officials established such a relationship under two of these circumstances, namely "when a government agent undertakes specific action to protect a person or property," and "by governmental actions that reasonably induce detrimental reliance by a member of the public . . . ." *Nelson*, ¶ 22 (citations omitted). *Nelson v. Driscoll* informs our decision regarding both of these claims.

¶11     In *Nelson*, an officer stopped a motorist and sought to administer a sobriety test, but due to inclement weather conditions was unable to do so. *Nelson*, ¶¶ 8-10. Although the officer did not believe he had probable cause to arrest the driver, Trina, he advised her that, given the weather and that she had been drinking, he did not think it safe for her to drive home. *Nelson*, ¶ 10. Trina and her husband then exited the car and stated that they would call a friend for a ride. The officer then drove around the block three times to check on them before leaving the couple for good. Soon afterwards a motorist struck and killed Trina as she walked between lanes of traffic on the highway. *Nelson*, ¶¶ 12-13.

4

¶12    We concluded that, in pulling Trina over and directing how she and her husband could go home, the officer assumed a duty to protect her from harm. *Nelson*, ¶ 40. The County's actions in this case, however, were qualitatively different. Officer Blume did undertake to look for Zachary during his routine patrol. However, since Blume did not see or have any contact with Zachary, his actions did not influence how Zachary behaved, as in *Nelson*, nor did Zachary rely, to his detriment, on Blume's actions. The same is true for the actions of the dispatcher.

¶13    Eves additionally argues that the dispatcher misinformed the Hospital in stating that the County had no authority to detain Zachary if an officer found him. She contends that under § 53-21-129, MCA (1995), in an emergency "a peace officer may take any person who appears to be seriously mentally ill and as a result of serious mental illness to be a danger to others" and briefly detain them to assess their mental health. Without ruling on whether this provision could have applied if a County peace officer had found Zachary, we note that, even if a peace officer could have detained Zachary under this statute, the statement by the dispatcher to the nursing supervisor would still not have created a special relationship between the County and Zachary because Zachary was in no way involved in this exchange. The reliance exception to the public duty doctrine quoted above would not apply because it would have been the Hospital which relied on the statement, not Zachary.

¶14    Therefore, we conclude that there was no special relationship that arose out of the actions of County officials such that those officials owed a duty to Zachary.

5

## CONCLUSION

¶15     The judgment of the District Court is affirmed.


                                        /S/ W. WILLIAM LEAPHART


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS