

DA 12-0129

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 302

ALYSSA GATLIN-JOHNSON (a minor) by
TIFFANY GATLIN, parent and next friend
of ALYSSA GATLIN-JOHNSON,

      Plaintiff and Appellant,

  v.

CITY OF MILES CITY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DV 05-103
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Michael G. Eiselein; Eiselein & Grubbs, PLLP, Billings, Montana

      For Appellee:

          Gerald B. Murphy, Emily Jones; Moulton Bellingham, P.C., Billings,
Montana

      For Amici Curiae:

          Justin Staples; Beck & Amsden, PLLC, Bozeman, Montana (for Montana
Trial Lawyers)

          Steven R. Milch; Crowley Fleck PLLP, Billings, Montana (for Montana
Association of Counties)

          Jim Nugent, Missoula City Attorney, Susan A. Firth, Chief Civil/Admin-
istrative Attorney, Missoula, Montana (for Montana League of Cities and
Towns)

Submitted on Briefs:  October 3, 2012

Decided:  December 21, 2012

Filed:

_____
                        Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Tiffany Gatlin (Gatlin) appeals from the District Court's order dated February 7, 2012, granting summary judgment to the City of Miles City (City). We reverse.

¶2 We restate the issue on appeal as follows:

¶3 Whether the District Court properly applied the public duty doctrine to grant summary judgment to the City.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 The following facts are taken from the District Court's order on summary judgment. Riverside Park is a facility owned and operated by the City. It includes an area of playground equipment for the use of children. The City designed and planned the playground area in Riverside Park and installed and maintained the equipment. The City accepted responsibility for the safety and maintenance of the playground equipment and the area around it.

¶5 In 2001, the City undertook a review of its park system, focusing on playground maintenance and safety. A review committee reported to the City Council that surface protection for playground equipment was important and that the goal was "to prevent serious injury and death." A risk specialist with the City's insurer recommended establishing adequate surfacing and "fall zones" under playground equipment, following guidelines developed by the Consumer Product Safety Commission. The City's park review committee recommended adoption of a policy to install fall areas around all playground equipment, and that those areas be raked daily in periods of peak use. In

3

January 2002, the City Council adopted a resolution adopting "current safety standards" for the City's parks.

¶6     In July 2002, Tiffany Gatlin brought her daughter, age 8, to play in Riverside Park. The child fell from a slide in the playground area and suffered a severe head injury. Gatlin sued the City for negligently failing to maintain a safe depth of impact-absorbing material (the City used bark chips) in the area under the slide. Gatlin also alleges that when the City received the slide from the manufacturer in 1997, the installation instructions required a "protective fall zone" below the slide. The manufacturer stated that there must be 12 inches of impact-absorbing material under the slide, in compliance with standards set by the Consumer Product Safety Commission.

¶7     The District Court granted summary judgment to the City, determining that the City owed no duty to Gatlin's daughter and that absent a duty the City could not be held liable for the accident. The District Court determined that the duty alleged by Gatlin—to safely maintain the playground area in the park—was not a duty owed specifically to her daughter, but was "owed to the general public at large" because the park was open and available to the general public. The District Court determined that the case required application of the "public duty doctrine," and that "[w]here a tort claim is made against a public body, such as a municipality, the public duty doctrine bars recovery unless a duty is created by a 'special relationship.'" The District Court determined that none of the recognized exceptions to the public duty doctrine applied.

¶8     In addition, the District Court rejected Gatlin's argument that the recreational use statute, § 70-16-302, MCA, applies to this case and imposes liability upon the City for

4

willful or wanton misconduct. The District Court held that the intent of the statute was to "lessen the duty of safety for landowners" and not to provide any protection for those who use land for recreational purposes.

¶9     Based upon these conclusions of law, the District Court granted summary judgment to the City.

## STANDARD OF REVIEW

¶10     This Court reviews a district court's decision on a motion for summary judgment de novo, to determine whether it is correct, using the same considerations as the district court under M. R. Civ. P. 56. *Newman v. Lichfield*, 2012 MT 47, ¶ 24, 364 Mont. 243, 272 P.3d 625. Summary judgment is proper when the moving party shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Weinert v. City of Great Falls*, 2004 MT 168, ¶ 19, 322 Mont. 38, 97 P.3d 1179.

¶11     The existence of duty is an issue of law, and this Court reviews a decision on an issue of law to determine whether it is correct. *Newman*, ¶ 23; *Town & Country Foods v. Bozeman*, 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283.

## DISCUSSION

¶12     Issue 1: whether the District Court properly applied the public duty doctrine to grant summary judgment to the City.

¶13     The plaintiff in a negligence case must establish that the defendant had a legal duty; that the defendant breached that duty; and that the breach caused injury and damages. *Lopez v. Great Falls Pre-Release Services*, 1999 MT 199, ¶ 18, 295 Mont.

5

416, 986 P.2d 1081. Duty turns primarily upon foreseeability, which depends upon whether or not the injured party was within the scope of risk created by the action of the alleged tortfeasor; that is, whether the injured party was a foreseeable plaintiff. *Lopez*, ¶ 28. Foreseeability analysis also includes determining the moral blame attached to the defendant's conduct, the prevention of future harm, the extent of the burden imposed, the consequence to the public of imposing duty, and the availability and cost of insurance. *Fisher v. Swift Transportation Co.*, 2008 MT 105, ¶ 28, 342 Mont. 335, 181 P.3d 601. Determining whether there is a legal duty is an issue of law for the court. *Massee v. Thompson*, 2004 MT 121, ¶ 27, 321 Mont. 210, 90 P.3d 394. Determining whether there was a breach of duty is an issue of fact for the fact finder in the case. *Lopez*, ¶ 31.

¶14 In *Nelson v. Driscoll*, 1999 MT 193, 295 Mont. 363, 983 P.2d 972, this Court recognized the "public duty doctrine" in claims alleging negligence by law enforcement officers. "The public duty doctrine provides that a governmental entity cannot be held liable for an individual plaintiff's injury resulting from a governmental officer's breach of a duty owed to the general public rather than to the individual plaintiff." *Massee*, ¶ 41. "The rule protects municipalities [and other governmental entities] from liability for failure to adequately enforce general laws and regulations, which were intended to benefit the community as a whole." E. McQuillin, *The Law of Municipal Corporations*, § 53.04.25 at 195-97 (3d ed. 2003).

¶15 This Court has recognized the applicability of the public duty doctrine to numerous situations involving claims that law enforcement officers breached a duty to the plaintiff. In that context, "the public duty doctrine expresses the policy that an

6

officer's overarching duty to protect and preserve the peace is owed to the public at large, not to individual members of the public." *Nelson v. State*, 2008 MT 336, ¶ 41, 346 Mont. 206, 195 P.3d 293 (citing *Eklund v. Trost*, 2006 MT 333, ¶ 33, 335 Mont. 112, 151 P.3d 870).  The doctrine has been applied to law enforcement's response to a crime scene, *Gonzales v. City of Bozeman*, 2009 MT 277, 352 Mont. 145, 217 P.3d 487, and to a missing person report, *Eves v. Anaconda-Deer Lodge County*, 2005 MT 157, 327 Mont. 437, 114 P.3d 1037.  We also have recognized the doctrine's applicability to governmental action involving the licensing of medical providers, *Nelson v. State*, ¶¶ 46-50, and to land use decisions by a local government body, *Prosser v. Kennedy Enterprises, Inc.*, 2008 MT 87, ¶¶ 23, 26-27, 342 Mont. 209, 179 P.3d 1178.

¶16    Even when the doctrine is applicable to governmental functions, however, we have applied exceptions where a "special relationship" exists that gives rise to a duty to a particular class of people to which the plaintiff belongs.  A special relationship can be established where there is a statute intended to protect from harm a specific class of persons including the plaintiff; when the government undertakes to protect a specific person; when governmental actions reasonably induce detrimental reliance by an individual; and where the government has actual custody of the plaintiff or of a third person who harms the plaintiff.  *See e.g. Orr v. State*, 2004 MT 354, ¶¶ 41-47, 324 Mont. 391, 106 P.3d 100 (special relationship found by virtue of specific public health protection statutes, State's repeated health inspections of mine, and reliance by miners on State inspections to disclose health hazards); *Massee*, ¶¶ 42-44 (domestic violence victim was within statutorily-protected class, giving rise to special relationship with law

7

enforcement charged with enforcing domestic violence statutes); *Eklund*, ¶ 39 (law enforcement owed duty to plaintiff as member of a special class of persons who, "by use of the streets and highways[,] are potential victims of a high speed chase"); *Nelson v. Driscoll*, ¶ 38 (officers had special relationship and thus owed duty to plaintiff where they undertook affirmative steps to keep her from driving her vehicle when intoxicated and she was later struck by passing motorist).

¶17 In the present case the District Court noted language from prior decisions from this Court that "it is necessary" to consider the public duty doctrine whenever there is a negligence claim against a public entity or person. *See e.g. Massee*, ¶ 41. Consideration of the public duty doctrine does not mean, however, that it always applies whenever a public entity or person is a defendant in a negligence case. The public duty doctrine was not intended to apply in every case to the exclusion of any other duty a public entity may have. It applies only if the public entity truly has a duty owed only to the public at large, such as a duty to provide law enforcement services or regulate the practice of medicine. It does not apply where the government's duty is defined by other generally applicable principles of law.

¶18 We have, for example, consistently applied the duty of ordinary care in premises liability cases to governmental defendants. *Dobrocke v. City of Columbia Falls*, 2000 MT 179, 300 Mont. 348, 8 P.3d 71 (rules of landowner liability applied to city property); *Henricksen v. State*, 2004 MT 20, 319 Mont. 307, 84 P.3d 38 (State could be held liable under rules applicable to property owners for injury sustained in State-owned building). In *Kaiser v. Town of Whitehall*, 221 Mont. 322, 718 P.2d 1341 (1986), this Court held

8

that the town owed to the plaintiff "and to the general public lawfully traveling on a public sidewalk . . . a duty to exercise ordinary care and to keep the premises (sidewalk) reasonably safe." This duty arose from general principles of premises liability. *Kaiser*, 221 Mont. at 325, 718 P.2d at 1343. In *Richardson v. Corvallis Public School District*, 286 Mont. 309, 321, 950 P.2d 748, 755 (1997), this Court applied the rules of landowner premises liability (duty to use ordinary care in maintaining premises in a reasonably safe condition and to warn of any hidden dangers) in a case where the plaintiff fell on an icy walkway on school property. In *Dobrocke*, this Court again applied general principles of landowner premises liability to a claim arising from plaintiff's fall on city-owned land. In *Henricksen*, this Court applied the principles of premises liability to a claim arising from a child's fall from a balcony in the library at Montana State University. *See also Bonilla v. Univ. of Mont.*, 2005 MT 183, 328 Mont. 41, 116 P.3d 823 (University had duty to its patrons to maintain safety in arena during ZZ Top concert).

¶19    None of these cases applied the public duty doctrine, even though each involved a claim against a governmental entity arising from premises open to use by the public. It is clear that in each case there was no need to invoke the public duty doctrine because the governmental entity had a specific duty, such as premises liability, that was sufficient to support a tort claim. This is consistent with the principles established in the Montana Tort Claims Act. Montana law provides that every governmental entity in Montana "is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Article II, section 18, of the

9

Constitution of the State of Montana." Section 2-9-102, MCA. Section 2-9-101(1), MCA, defines "claim" in the context of governmental tort liability as arising from an act or omission "under circumstances where the governmental entity, if a private person, would be liable to the claimant for the damages under the laws of the state." *State v. District Court*, 170 Mont. 15, 20, 550 P.2d 382, 384 (1976) (under the Constitution and implementing statute, local governmental entities are "responsible and liable for the negligence of their employees").

¶20 Here the District Court determined that the public duty doctrine applied because the playground was open to use by members of the public. It is clear, however, that numerous public lands and facilities are regularly open to use by members of the public, including public buildings, schools, parks, fairgrounds, recreation areas and public lands in general. The fact that members of the public are allowed to enter or use these facilities does not mean that the public duty doctrine applies to any negligence claim arising from that entry or use, or that liability for negligence can only be found if the plaintiff establishes that there is a special relationship with the public entity or person. It is therefore error to conclude, as the District Court did here, that the public duty doctrine applies to *any* tort claim made against any public body. Because clear and established rules of premises liability apply to this case the District Court erred in applying the public duty doctrine and erred in granting summary judgment to the City.

¶21 In the absence of foreseeability there is no legal duty, and in the absence of duty there is no negligence. *Lopez*, ¶ 26; *Nelson v. Driscoll*, ¶ 39. In analyzing foreseeability in this case, there are several pertinent considerations. First, upon defining the potentially

negligent conduct here as failing to maintain a safe fall zone under the playground equipment, it is clear that children who fall while using the equipment are in the zone of potential plaintiffs. Second, based upon information presented by Gatlin, it is clear that the City appreciated the fall zone issue, and that the City recognized the potential of serious injury if fall zones were not adequately maintained. Third, the City expressly adopted standards on safe fall zones as City policy, thereby expressly undertaking a responsibility for following those standards. *See Lopez*, ¶ 18 (prerelease center contract imposed actionable duties on the center); and *Ecklund*, ¶ 42 (police pursuit policy was a factor in determining foreseeability). Here, the City, by choosing to establish a playground and to install the equipment assumed the duty of acting with reasonable care in doing so.

¶22 As to the remaining foreseeability analysis factors noted above, *Fisher*, ¶ 28, the moral blame that can be attached to conduct that causes or allows serious injury to children is self evident. Requiring public entities who install playground equipment to provide fall zones that meet recognized standards will clearly work to prevent future injury. The burden upon the City here to provide fall zones that meet standards is no different than the burden that the City itself adopted in its own policies. The consequence to the public of imposing a duty to provide safe playgrounds should be fewer serious injuries to children. Last, while there is little information on the availability of insurance coverage in the record, the City evidently had insurance at least at the time its insurer inspected the City parks and made recommendations.

¶23 Based upon this analysis of foreseeability, it is reasonable and proper to hold the City to a duty to exercise reasonable care in maintaining its public parks. The public duty doctrine does not apply.

¶24 Both parties agree that the Montana "recreational use statute" applies to this case. Section 70-16-302(1), MCA, provides in part:

> A person who uses property, including property owned or leased by a public entity, for recreational purposes, with or without permission, does so without any assurance from the landowner that the property is safe for any purpose if the person does not give a valuable consideration to the landowner in exchange for the recreational use of the property. The landowner owes the person no duty of care with respect to the condition of the property, except that the landowner is liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct.

Gatlin argues that the statute imposes a duty of care on the City to refrain from willful or wanton misconduct. The City argues that the statute is designed to limit the liability of landowners and to raise the standard of care to willful or wanton misconduct. The District Court considered this statute only in the context of whether or not it created a special relationship exception to the public duty doctrine. It is clear that the recreational use statute is designed to limit the liability of landowners, including public landowners, in certain situations. However, it is also clear that the statute does not eliminate landowner liability to recreational users, and that landowners may be "liable to the person for any injury to person or property for an act or omission that constitutes willful or wanton misconduct." Section 70-16-302(1), MCA.

¶25 Since both parties agree that the recreational use statute applies to this case, we assume without deciding, that an 8-year-old girl playing in a city park constitutes a

12

"recreational purpose" under the broad definition in § 70-16-301, MCA, and as referred to in § 70-16-302(1), MCA. Gatlin asserts that she is ready and able to prove willful and wanton misconduct by the City in maintaining the park and the playground area, and that she can therefore establish a liability claim as allowed by § 70-16-302(1), MCA. While proof of willful or wanton misconduct can be difficult, *Jobe v. City of Polson*, 2004 MT 183, ¶¶ 17-20, 322 Mont. 157, 94 P.3d 743, Gatlin is entitled to present her case. Based upon the reasonable inferences that could be drawn from the evidence submitted on summary judgment, the trier of fact could conclude that the City had knowledge of the danger of children falling on hard surfaces in the park and knowledge of the steps that could be taken to reduce that risk. The determination of whether that rises to the level of willful or wanton misconduct should be decided at trial. *Jobe*, ¶ 20.

¶26 The District Court's summary judgment order is reversed and this matter is remanded for further proceedings consistent with this opinion.


                                             /S/ MIKE McGRATH


We concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS


13

Justice Jim Rice, concurring.

¶27 I concur with the Court's effort to define more clearly the boundaries of the public duty doctrine and in the decision to reverse. I would note that the Court's analysis includes some post-hoc rationalizing and categorizing of our earlier decisions that was not necessarily contemplated at the time those cases were decided. For instance, in ¶ 17 of the Opinion, *Dobrocke*, *Hendricksen*, *Kaiser*, *Richardson*, and *Bonilla* are categorized as cases where the Court did not apply the public duty doctrine to government defendants, but it is noteworthy that the public duty doctrine was not raised as an issue in any of those cases. Had the doctrine been raised and argued, the result, and more certainly the analysis, could have been different. *See Prindel v. Ravalli Co.*, 2006 MT 62, ¶¶ 25, 26, 331 Mont. 338, 133 P.3d 165 (declining to address the doctrine's applicability where the County did not "explicitly raise the public duty doctrine as a defense" and will take up the question "[i]n the future, when the issue has been properly briefed."). The Court states that "there was no need to invoke the public duty doctrine" in these cases, Opinion, ¶ 17, but, again, that was not a conclusion reached at the time after an analysis was performed. In the future, it will be necessary to further refine the "generally applicable principles of law" governing governmental duty to which the doctrine does not apply, Opinion, ¶ 17, in cases where the doctrine is properly raised and argued, even, potentially, cases involving premises liability. In *Dobrocke*, for example, the claim was brought by an individual who traversed onto City property not intended by the City to invite pedestrians. *Dobrocke*, ¶ 33. Although a duty to the claimant was found to be owed in that case, premises liability cases raising uniquely atypical facts

14

could require a broader analysis of duty and thereby implicate the doctrine, which is the analytical approach this Court employs to determine governmental duty.

¶28    I concur.

/S/ JIM RICE